IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

KUZHIKALAYIH     MATHEWS     a/k/a
SAMUEL "SAM" MATHEWS,

                Plaintiff,

v.

UNIVERSITY     OF     PITTSBURGH
PHYSICIANS a/k/a UPP, INC.,

                Defendant.

CIVIL DIVISION

NO.:  GD-16-10957

TYPE OF PLEADING:

**COMPLAINT IN CIVIL ACTION**

FILED ON BEHALF OF PLAINTIFF

COUNSEL OF RECORD FOR THIS
PARTY:

ROLF LOUIS PATBERG, ESQUIRE
PA I.D. NO.:  65185

PATBERG, CARMODY & GING
DEUTSCHTOWN CENTER
801 VINIAL STREET - THIRD FLOOR
PITTSBURGH, PA  15212
(412) 232-3500

<u>**JURY TRIAL DEMANDED**</u>


EXHIBIT
A

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | | |
|---|---|---|
| KUZHIKALAYIH   MATHEWS   a/k/a | ) | CIVIL DIVISION |
| SAMUEL "SAM" MATHEWS, | ) | |
| | ) | NO.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY   OF   PITTSBURGH | ) | |
| PHYSICIANS a/k/a UPP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Kuzhikalayih Mathews a/k/a Samuel "Sam" Mathews, by and through his attorney, Rolf Louis Patberg, Esquire, and the law firm of Patberg, Carmody & Ging, and files the herein Complaint in Civil Action and, in support thereof, avers as follows:

1.      Plaintiff Kuzhikalayih "Samuel" Mathews is an adult individual currently residing at 2617 Patrice Court, Murrysville, PA  15668.  He is currently 62 years of age with a date of birth of July 18, 1953.

2.      Defendant University of Pittsburgh Physicians, a/k/a UPP, Inc. ("UPP") is a corporation trading and doing business at 200 Lothrop Street, Pittsburgh, PA  15213.

3.      The above-captioned matter is an employment discrimination case.

4.      On or about December 16, 2014, the Plaintiff filed a Charge of Discrimination with the Pennsylvania Human Relations Commission ("PHRC") at Docket Number 201503939.

5.      On or about December 16, 2014, the Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") at Docket Number 533-2014-01109.

2

6.    Kuzhikalayih "Samuel" Mathews ("Sam Mathews") is a member of a protected class under the Pennsylvania Human Relations Act and the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964, as he is and was, at all times relevant to the herein Complaint, in excess of forty (40) years of age with a date of birth of July 18, 1953. In addition, Sam Mathews is in a protected class, as his national origin is that of Singaporean National of Indian origin, having immigrated to the United States in August 1978 and was granted permanent residence a/k/a green card on December 6, 1982 as contemplated.

7.    Sam Mathews brings the herein charge pursuant to the Pennsylvania Human Relations Act, the Age Discrimination in Employment Act, and Title VII of the Civil Rights Act of 1964, based upon age and national origin.

8.    Sam Mathews brings this charge based upon adverse employment actions, harassment, retaliation and termination.

9.    In December 2001, Samuel Mathews was hired by UPP as a Financial Analyst Associate.

10.    On or about December 18, 2010, Sam Mathews underwent a manager evaluation by Paula Hutson for the work period December 20, 2009 through December 18, 2010. Sam Mathews was rated in twenty-one (21) categories and either received a "solid, strong, good performer," a "superior performer," or a "top performer." Sam Mathews received eleven (11) "solid, strong, good performer" ratings; nine (9) "superior performer" ratings; and one (1) rating of "top performer (role model)". Sam Mathews' overall 2010 rating summary was graded as a "superior performer." The following evaluation was provided by Paula Hutson:

> "Sam continues to be a very important member of UPP Peds Finance.  His role in the expense management process is very essential to the department.  He has maintained great working

relationships with faculty/staff & his communication and customer service competencies are key elements to this process."

11.     On or about December 17, 2011, Sam Mathews received a Manager Evaluation from Paula Hutson for the time period of December 19, 2010 through December 17, 2011. Sam Mathews received seven (7) "solid, strong, good performer" ratings. Sam Mathews received ten (10) "superior performer" ratings. Sam Mathews received two (2) "top performer (role model)" ratings. Sam Mathews' overall rating was that of "superior performer." Paula Hutson rated Sam Mathews as follows:

> "Sam continues to be a key team member of Peds Finance. He handles the expense management function very well in all aspects (from training staff to ensuring policy guidance to handling our internal audits). In addition, Sam has handled the implementation to BAR very well for our UPP external agreements. The CLT invoicing will be quite a challenge to undertake this year & am planning to promote Sam to the next level if this goal is achieved. Sam has done an exceptional job in all responsibilities over the last several years and a promotion is well deserved for his accomplishments."

12.     On or about December 15, 2012, Sam Mathews underwent a manager evaluation by Paula Hutson for the period of December 18, 2011 through December 15, 2012. Sam Mathews received eighteen (18) "solid, strong, good performer" ratings. Sam Mathews received four (4) "superior performer" ratings. His overall rating was "solid, strong, good performer." His direct supervisor, Paula Hutson, commented as follows:

> "Sam is a great asset to Peds Finance. His many years of experience in Supply Management is very valuable & is clearly evident by the tremendous job Sam does every day in educating staff and faculty, compliance to policy, etc. Sam has also done very well with our UPP as well as CLT invoicing & was a very clean transition for us - job well done!"

13.     By year-end 2012, Sam Mathews was promoted to Financial Analyst Intermediate. Matthews undertook additional job duties.

4

14.     In April 2013, UPP announced reorganization and merger of Department of Orthopedics and Pediatrics Departments. Janet Storer was to be installed as Finance Department Manager.

15.     In May 2013, Sam Mathews was re-interviewed for his position and encouraged to stay in current designation by Janet Storer, but working for both the Orthopedics and Pediatrics Departments performing the same functions for the same pay.

16.     In July 2013, the Finance Departments of Pediatric and Orthopedics were reorganized and consolidated.

17.     In July 2013, Sam Mathews was installed as Financial Analyst, Intermediate (lateral move) by UPMC, UPP Department of Pediatrics and Orthopedics housed in Lawrenceville, Children's Hospital reporting to Paula Hutson, Lead Analyst.

18.     Prior to the reorganization, Paula Hutson acted as the Controller and Jeff Martin and Sam Mathews reported directly to Paula Hutson.

19.     After reorganization, Brian Fritz became the Director of Financing and Janet Storer reported directly to Fritz. Hutson was the lead analyst and Mathews remained an Intermediate Financial Analyst due to lateral move and received the same rate of pay. Jeff Martin was a Financial Analyst Associated who had been demoted because he was deemed unqualified as he did not have a college degree which was a prerequisite with a pay cut after reorganization and the merger of the orthopedics and pediatrics departments. Kathy Osterreider remained a Senior Analyst.

20.     Prior to July 1, 2013, Janet Storer was the Controller of the Orthopedics Department while Kathy Osterreider was the Senior Financial Analyst. Upon information and

5

belief, Pamela Walsh acted in a capacity of Accountant though it was apparent that she was a high school graduate without requisite qualifications.

21.   On July 1, 2013, Janet Storer was installed as Finance Manager of the merged orthopedics and pediatrics departments.  Sam Mathews continued to report directly to Paula Hutson and continued to be housed in Lawrenceville while Janet Storer was housed in Oakland. Janet Storer became a supervisor of Sam Mathews.

22.   In December of 2013, Kathy Osterreider, a Senior Financial Analyst, announced her retirement.  Janet Storer instructed Sam Mathews to assume several of Kathy Osterreider's duties with no offer of change in position or pay.  No further instructions or discussions occurred at that time.

23.   On or about December 14, 2013, Sam Mathews received a manager evaluation from Paula Hutson for the period of December 16, 2012 through December 14, 2013.  Sam received twenty (20) "solid, strong, good performer" ratings and one (1) "superior performer" rating.  His overall performance was a "solid, strong, good performer" rating.  His supervisor, Paula Hutson, commented as follows with regard to Sam Mathews' overall performance:

> "Sam has been a good employee in the department.  He is always
> happy to help and willing to dig in.  Sam has a good repoire with
> all members of the team."

24.   Beginning in January 2014 or approximately within one (1) month thereof, Sam Mathews was subjected to harassment, intimidation, and subjected to a hostile work environment.

25.   In February 2014, upon Sam Mathews' return from a previously approved time off, he was told that he would be housed permanently at the Kaufmann Building.  Mr. Mathews was criticized for leaving the work area when he went to deposit checks as part of his assigned

6

duties and was told to report to Janet if he intended to leave the premises. This was disparate treatment, as no other employee was given these break violations.

26.    In March 2014, maintained hostile environment and criticized for every minor perceived error. Mathews was constantly reminded that Pam Walsh (a younger white, less qualified female) was really good at what she did. No training was provided and no communication occurred.

27.    In April 2014, UPP maintained a hostile environment and Sam Mathews was criticized for every minor perceived error. Sam Mathews was constantly reminded that Pam Walsh was "really good at what she did." No training was provided to Sam Mathews by UPP.

28.    In May 2014, UPP continued to maintain a hostile environment and criticized Sam Mathews for every minor perceived error.

29.    On or about May 12, 2014, Sam Mathews sent Meghann Ledford of Human Resources an e-mail regarding "a situation at work." Exhibit 1.

30.    On May 12, 2014, Janet Storer and Sam Mathews had an exchange of e-mails regarding the application of medical staff dues as to the CME allowance or orthopedics and peds. Janet Storer chastised Sam Mathews regarding whether or not they should be deducted from CME. Exhibit 2.

31.    UPP was on notice of the hostile work environment as, among other issues, Meghann Ledford informed Janet Storer of allegations of harassment by Sam Mathews.

32.    After Ledford reported the allegations to Storer, Storer's harassment intensified and Storer engaged in a preplanned course of conduct to systematically harass Sam Mathews and engage in a methodical preplanned scheme to terminate Sam Mathews' employment.

33.    Sam Mathews, in need of additional training and guidance, repeatedly attempted to meet with Janet Storer. Storer refused.

34.    On or about May 20, 2014, Sam Mathews e-mailed Meghann Ledford indicating that he would call her from his cell. Exhibit 1.

35.    On May 21, 2014, Sam Mathews spoke with Meghann Ledford in Human Resources by telephone at 8:00 a.m. At a 9:00 a.m. staff meeting he told Janet that he had done this and to expect a phone call from Meghann. He reminded her that she had goaded him into contacting Human Resources and she acknowledged the same.

36.    On May 22, 2014, Janet Storer requested Sam Mathews attend a meeting and berated him for invoicing Carnegie Mellon as an alleged overbilling. The account had not been billed since October of 2013 and she proceeded to write Sam Mathews "up".

37.    On or about May 23, 2014 at 2:30 p.m., Meghann Ledford e-mailed Sam Mathews asking to speak with him again. Exhibit 1.

38.    On or about May 23, 2014 at 2:39 p.m., Sam Mathews e-mailed Meghann Ledford inquiring as to whether or not she had spoken to Janet. Sam Mathews indicated that he had felt "direct repercussions" and that she had challenged him to bring it to the attention of Human Resources. He requested a direct meeting with Meghann Ledford. Exhibit 1.

39.    On or about May 29, 2014 at 8:39 a.m., Meghann Ledford e-mailed Sam Mathews indicated that they needed to set up a time to talk. Exhibit 1.

40.    On or about June 2, 2014, Meghann Ledford e-mailed Sam Mathews to indicate that she wished to set up a meeting with him that week. Exhibit 1.

41.    On or about June 3, 2014 at 10:00 a.m., Meghann Ledford sent an e-mail to Sam Mathews to make inquiry regarding a comment he had made to Janet Storer a few prior weeks

before indicating that he would like to meet Janet Storer after work sometime after she discussed

performance issues. Exhibit 1.

42.    On or about June 3, 2014 at 10:11 a.m., Sam Mathews e-mailed Meghann

Ledford explaining a comment that he had made to Janet which was intended to ask if they could

speak in private as opposed to in front of other individuals who are milling around the office.

Exhibit 1.

43.    On or about June 12, 2014 at 10:43 a.m., Janet Storer e-mailed Sam Mathews to

confirm the meetings for June 17th and June 20th. She also noted that Thursday was the Pirate

game. Exhibit 3.

44.    On or about June 12, 2014, Janet Storer made inquiry to Sam Mathews as to

whether or not he was going to the Pirate game with UPMC. He noted that he had a prior

commitment. She commented that she was not surprised that he was not interested in "the great

American past time," inferring that because of his national origin, he was not attending his work

function. Exhibit 3.

45.    On June 12, 2014, Janet Storer, Paula Hutson, Brian Fritz (Storer's direct

supervisor) and Meghann Ledford signed a Performance Improvement Plan ("PIP") document.

The Performance Improvement Plan document identified the following pretextual areas resulting

in the Performance Improvement Plan:

a.    Failure to complete special projects regarding P&L;

b.    Placing a request for payment without the required receipt;

c.    Failure to reconcile the recruitment expenses and requested support in
                of 2013;

d.    Retaining the Chairman's phone bill in error;

e.    Overbilling Carnegie Mellon for its sports contract for the department;

9

f.      Submitting expenses into an e-voucher for McKeesport medical staff dues
        that would have been billed to Mercy had the mistake not been caught;

g.      Failing to recognize that the physicians had met their CME limits for
        medical staff dues causing overpayment of the CME allotment.

46.     The purported deficiencies set forth in the preceding paragraph are entirely
pretextual and have no merit.

47.     On June 15, 2014 at 5:32 p.m., Sam Mathews contacted Brian Fritz requesting a
meeting and voicing his concerns over the confusion regarding his Performance Improvement
Plan. Exhibit 4.

48.     On June 16, 2014 at 11:45 a.m., Brian Fritz responded to Mathews' request for a
meeting. Based upon false and misleading information provided by Storer, Fritz contended that
there were performance issues and an associated plan to move forward that he had previously
discussed his performance issues with Storer. Fritz also contended that there was supporting
documentation in place, but did not want to meet if Sam Mathews was to challenge the
Performance Improvement Plan. Hence, although Mathews had discussed the harassment, Fritz
refused. Exhibit 5.

49.     On June 16, 2014 at 12:24 p.m., Sam Mathews responded to Brian Fritz voicing
that he was relieved that there had been a plan of some sort for his training and development, as
there had previously been no plan the prior eleven (11) months. Mathews also expressed
concern that his next mistake would result in termination. He also stated that Janet Storer's
conclusions and her performance to date were based on incomplete information. Exhibit 5.

50.     Despite the numerous concerns that Mathews voiced and his complaints of
harassment, UPP never conducted any substantive investigation of these allegations.

10

51.     On or about June 17, 2014, Sam Mathews met with Janet Storer regarding a Performance Improvement Plan.

52.     On or about June 18, 2014 at 12:31 p.m., Janet Storer forwarded an e-mail to Sam K. Mathews, cc'd to Brian Fritz, Paula Hutson, and Meghann Ledford.  The purported purpose of the e-mail was to cover points that had been discussed at the PIP meeting, but now introduced four (4) brand new projects that were to be assigned to Mathews to judge his competence.  These projects were previously completed by the Senior Financial Analyst or others with the requisite training:  (a) Rogal & Fowler P&L; (b) CHP Support JE; (c) CHP P&L; and (d) Orthopedics P&L).  She noted that training would begin on the profit & loss as to orthopedics at their next meeting and review various points that had been discussed during the meeting.  Janet Storer also referenced "some time off due to personal issues."  Mathew's close relative passed away on June 16th and he indicated he would need to be at the funeral that upcoming weekend.

53.     On or about June 18, 2014, Janet Storer sent an e-mail to Sam Mathews regarding product ID's for the next year and indicating that she would provide updated information.  Said information was not timely provided and was purposely withheld by Storer and/or UPP so as to inhibit Mathews' ability to perform his job function.

54.     On or about June 19, 2014 at 7:26 a.m., Vivekanand Allada sent an e-mail to Paula Hutson and Janet Storer regarding an individual to perform grand rounds and expenses related thereto.

55.     On or about June 19, 2014 at 9:52 a.m., an e-mail was sent from Janet Storer to Sam Mathews discussing meal allowances.

56.     On or about June 19, 2014 at 9:57 a.m., Sam Mathews sent an e-mail to Janet Storer indicating a denial Allada's request came from Pitt and not from him.

11

57.    On or about June 20, 2014 at 9:00 a.m., a meeting was scheduled between Sam Mathews and Janet Storer.

58.    On or about June 23, 2014 at 11:33 a.m., Sam Mathews e-mailed Janet asking her to advise as to her schedule for the week so that he could mark his calendar.

59.    On June 24, 2014 at 11:08 a.m., Paula Hutson circulated an e-mail to Janet Storer memorializing the meeting of said date with Sam to go over the components of the breakeven P&L Agreements and the format utilized.

60.    On June 24, 2014 at 1:57 p.m., and e-mail from Paula Hutson to Janet Storer dated June 24 was forwarded to Sam Mathews.

61.    On or about June 24, 2014, Sam Mathews again met with Janet Storer.

62.    On or about June 27, 2014, Sam Mathews was to meet with Janet Storer, but she was once again unavailable at the appointed date and time.

63.    On July 1, 2014, Sam Mathews was told that, effective July 7, he was to be located to the AOB and that none of the files pertaining to orthopedics would be moved to AOB. Again, this tactic was utilized to inhibit Mathews' ability to perform his job functions.

64.    On July 2, 2014, Janet Storer e-mailed Sam Mathews and cc'd Paula Hutson, noting that they did not, once again, have an opportunity to meet and that she would be back the following Monday and a meeting would be set up accordingly.

65.    On or about July 3, 2014 at 4:30 p.m., Sam Mathews circulated an e-mail to update the discussion points from the PIP meeting to Janet Storer, Brian Fritz, Paula Hutson, and Meghann Ledford. No substantive response was received.

12

66.    On or about July 7, 2014 at 12:54 a.m., Janet Storer e-mailed Sam Mathews, cc'ing Brian Fritz, Paula Hutson and Meghann Ledford providing three (3) potential dates and times for a meeting.

67.    On July 8, 2014, Sam Mathews e-mailed Janet Storer noting that she was, once again, unable to make the meeting of said date and enclosed his drill down on the Rogal & Fowler P&L highlighting information that Janet Storer had promised Mathews, but never delivered to enable him to complete said project..

68.    On or about July 9, 2014 at 3:41 p.m., Sam Mathews e-mailed Meghann Ledford regarding the PIP, enclosing the Rogal & Fowler P&L and voicing his willingness to complete the process to the best of his availability to prove to Janet that he can be a valuable member of the team.

69.    On or about July 10, 2014 at 7:53 a.m., Janet Storer sent an e-mail to Sam Mathews regarding trending tab is charges payment and wrvu's for FY14.

70.    On or about July 10, 2014 at 12:46 p.m., Janet Storer again canceled the meeting with Sam Mathews of even date thereof.

71.    On or about July 11, 2014 at 2:30 p.m., Meghann Ledford and Sam Mathews met to discuss moving forward with the PIP.

72.    On or about July 11, 2014, Sam Mathews notified Meghann Ledford at a meeting at AOB that he intended to file a complaint with the Equal Employment Opportunity Commission. This eventually resulted in a retaliatory discharge as later discussed herein.

73.    On July 12, 2014, Sam Mathews realized the seriousness of Janet's nefariousness and obvious fabrication of facts and sent his complaint to the EEOC by certified mail.

74.     On July 14, 2014 at 3:22 p.m., Meghann Ledford requested that Sam Mathews provide his statement and recollection regarding the meeting they had on July 9.

75.     On or about July 15, 2014 at 9:16 a.m., Meghann Ledford e-mailed Sam Mathews to see if he received the e-mail regarding July 9.

76.     On July 16, 2014 at 10:23 a.m., Sam Mathews e-mailed Meghann Ledford documenting various acknowledgments that she had made and indicating that he had completed his prior task, but additional jobs with orthopedics had been delayed because of logistical delays in transitioning the responsibility to other employees.   Ledford never investigated these contentions.

77.     On July 28, 2014, a Performance Improvement Plan conclusion document is entered selecting Sam Mathews for termination.

78.     On July 29, 2014, Sam Mathews was terminated from his employment at UPMC.

79.     On July 30, 2014, Sam Mathews forwarded a letter to Meghann Ledford at UPMC PSD Human Resources of his intention to file a claim for discrimination.

80.     On August 8, 2014, Mr. Mathews had a telephonic meeting with Marina Goodman and filed a verbal grievance.

81.     During the course of Mathew's employment, Janet Storer made a comment on Naveed Ismal stating, "now that's an Indian I don't mind working with. Plus Dr. Fu thinks he is a snazzy dresser."

82.     After the filing with the PHRC and EEOC, the PHRC deferred to the EEOC.

83.     The EEOC conducted an investigation.

84.     On June 17, 2016, the EEOC issued a Right to Sue letter, a copy of which is attached hereto as Exhibit 6.

14

85.   As such, Plaintiff has exhausted all administrative remedies.

## COUNT I:  AGE DISCRIMINATION - PENNSYLVANIA HUMAN RELATIONS ACT (ADVERSE EMPLOYMENT ACTIONS)

86.   Plaintiff incorporates paragraphs 1 through 85 of the herein Complaint in Civil Action as if the same were set forth here at length.

87.   Sam Mathews' protected class is that of an individual whose age is in excess of 40, as defined under the Pennsylvania Human Relations Act.

88.   From early 2014 until the date of Sam Mathews' termination on July 29, 2014, Sam Mathews was subjected to adverse employment actions by UPP, including adverse performance reviews and, eventually, his termination on July 29, 2014.

89.   Sam Mathews was detrimentally affected, as Sam Mathews was first placed on a performance improvement plan and then terminated on July 29, 2014.

90.   UPP failed to take any prompt or effective action against individuals for this discriminatory conduct.

91.   Based upon the foregoing, the Plaintiff alleges that Defendant violated 43 P.S. §955 of the Pennsylvania Human Relations Act, 43 P.S. §§951-963.

92.   The Plaintiff prays that the Defendant be required to provide all appropriate remedies under the Pennsylvania Human Relations Act, including reinstatement, back pay, front pay, attorneys' fees and all compensable damages.

15

## COUNT II: PENNSYLVANIA HUMAN RELATIONS ACT

### ETHNICITY/RACIAL DISCRIMINATION (ADVERSE EMPLOYMENT ACTION)

93.     Plaintiff incorporates paragraphs 1 through 92 of the herein Complaint in Civil Action as if the same were set forth here at length.

94.     Sam Mathews is in a protected class as he is of Singaporean National of Indian origin and is protected by the Pennsylvania Human Relations Act.

95.     From early 2014 until the date of Sam Mathews' termination on July 29, 2014, Sam Mathews was subjected to adverse employment actions by his employer, including adverse performance reviews and, eventually, his termination on July 29, 2014.

96.     Sam Mathews was detrimentally affected, as Sam Mathews was first placed on a performance improvement plan and then terminated on July 29, 2014.

97.     UPP failed to take any prompt or effective action against individuals for this discriminatory conduct.

98.     Based upon the foregoing, the Plaintiff alleges that Defendant violated 43 P.S. §955 of the Pennsylvania Human Relations Act, 43 P.S. §§951-963.

99.     The Plaintiff prays that the Defendant be required to provide all appropriate remedies under the Pennsylvania Human Relations Act, including reinstatement, back pay, front pay, attorneys' fees and all compensable damages.

### COUNT III: DISCRIMINATION – AGE DISCRIMINATION IN EMPLOYMENT ACT

100.    Sam Mathews incorporates paragraphs 1 through 99 of the herein Complaint in Civil Action as if the same were set forth here at length.

101.    Sam Mathews' protected class is age, over age 40.  Sam Mathews is qualified to file this Complaint because he was employed by UPP at all relevant times.

16

102.   From early 2014 through his termination on July 29, 2014, Sam Mathews was placed on a performance improvement plan and eventually terminated due to his age.

103.   Sam Mathews believes that Defendant's actions were due to his age and in retaliation for communication to his employer that he was filing a complaint with the Equal Employment Opportunity Commission and complaining to UPP regarding the discrimination.

104.   Based upon the foregoing, Sam Mathews alleges that UPP violated the Age Discrimination in Employment Act.

The Plaintiff prays that the Defendant be required to provide all appropriate remedies under the Age Discrimination in Employment Act, including reinstatement, back pay, front pay, attorneys' fees and all compensable damages.

## COUNT IV:  AGE DISCRIMINATION - PENNSYLVANIA HUMAN RELATIONS ACT (HARASSMENT AND RETALIATION)

105.   Plaintiff incorporates paragraphs 1 through 104 of the herein Complaint in Civil Action as if the same were set forth here at length.

106.   Sam Mathews' protected class is that of an individual whose age is in excess of 40, as defined under the Pennsylvania Human Relations Act.

107.   From early 2014 until the date of Sam Mathews' termination on July 29, 2014, Sam Mathews was subjected to harassment and was retaliated by UPP, including adverse performance reviews and, eventually, his termination on July 29, 2014 and overall harassment.

108.   Sam Mathews was detrimentally affected, as Sam Mathews was first placed on a performance improvement plan and then terminated on July 29, 2014.

109.   UPP failed to take any prompt or effective action against individuals for this discriminatory conduct.

17

110.   Based upon the foregoing, the Plaintiff alleges that Defendant violated 43 P.S. §955 of the Pennsylvania Human Relations Act, 43 P.S. §§951-963.

111.   The Plaintiff prays that the Defendant be required to provide all appropriate remedies under the Pennsylvania Human Relations Act, including reinstatement, back pay, front pay, attorneys' fees and all compensable damages.

## COUNT V:  PENNSYLVANIA HUMAN RELATIONS ACT
## ETHNICITY/RACIAL DISCRIMINATION (HARASSMENT AND RETALIATION)

112.   Plaintiff incorporates paragraphs 1 through 111 of the herein Complaint in Civil Action as if the same were set forth here at length.

113.   Sam Mathews is in a protected class as he is of Singaporean national of Indian origin and is protected by the Pennsylvania Human Relations Act.

114.   From early 2014 until the date of Sam Mathews' termination on July 29, 2014, Sam Mathews was subjected to harassment and retaliation by his employer, including adverse performance reviews and, eventually, his termination on July 29, 2014.

115.   Sam Mathews was detrimentally affected, as Sam Mathews was first placed on a performance improvement plan and then terminated on July 29, 2014.

116.   UPP failed to take any prompt or effective action against individuals for this discriminatory conduct.

117.   Based upon the foregoing, the Plaintiff alleges that Defendant violated 43 P.S. §955 of the Pennsylvania Human Relations Act, 43 P.S. §§951-963.

118.   The Plaintiff prays that the Defendant be required to provide all appropriate remedies under the Pennsylvania Human Relations Act, including reinstatement, back pay, front pay, attorneys' fees and all compensable damages.

18

## COUNT VI:  DISCRIMINATION – AGE DISCRIMINATION IN EMPLOYMENT ACT (HARASSMENT AND RETALIATION)

119.   Sam Mathews incorporates paragraphs 1 through 118 of the herein Complaint in Civil Action as if the same were set forth here at length.

120.   Sam Mathews' protected class is age, over age 40.  Sam Mathews is qualified to file this Complaint because he was employed by UPP at all relevant times.

121.   From mid-July 2014 through his termination on July 29, 2014, Sam Mathews was placed on a performance improvement plan, eventually terminated, harassed and retaliated against, due to his age.

122.   Sam Mathews believes that Defendant's actions were due to his age and in retaliation for communication to his employer that he was filing a complaint with the Equal Employment Opportunity Commission on July 11, 2014 and his complaints to Human Resources Representatives.

123.   Based upon the foregoing, Sam Mathews alleges that UPP violated the Age Discrimination in Employment Act.

124.   Sam Mathews prays that UPP be required to provide all appropriate remedies under the Age Discrimination in Employment Act, including reinstatement, back pay, front pay, attorneys' fees and all compensable damages.

19

## COUNT VII:  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

125.   Sam Mathews incorporates paragraphs 1 through 124 of the herein Complaint in Civil Action as if the same were set forth here at length.

126.   Sam Mathews submits that each and all of the actions described herein are in violation of Title VII of the Civil Rights Act of 1964 and the allegations therein are incorporated by reference.

127.   Sam Mathews prays that UPP be required to provide all appropriate remedies under Title VII of the Civil Rights Act of 1964.

RESPECTFULLY SUBMITTED:

PATBERG, CARMODY & GING

DATE:  6-20-16        By
                      Rolf Louis Patberg, Esquire
                      PA I.D. No.: 65185

PATBERG, CARMODY & GING
Deutschtown Center
801 Vinial Street - Third Floor
Pittsburgh, PA 15212
(412) 232-3500

Attorney for Sam Mathews.

20

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

_____

Date Signed

Kuzhikalayih "Samuel" Mathews

21

## Sam Mathews

| | |
|---|---|
| **From:** | Mathews, Sam K <mathewssk@upmc.edu> |
| **Sent:** | Tuesday, June 03, 2014 10:11 AM |
| **To:** | Ledford, Meghann |
| **Subject:** | RE: I left you a phone message |

<u>I never said, nor intended it to be after work</u>.  She was taking me to task about one particular matter while several of the staff was milling around the office and I asked if we could discuss the matter privately, because I was embarrassed about the people who were listening in to the conversation.  She misinterpreted my statement and I have tried to clarify that on a couple of occasions in the interim.

Sam Mathews

**From:** Ledford, Meghann
**Sent:** Tuesday, June 03, 2014 10:00 AM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

Sam,

I would rather not wait till next week.  Here is what I need to discuss, Janet told me that a few weeks back that you said something to her in regards to how you would like to meet her after work sometime after she had discussed with you some of your performance issues.  I need you to provide me with a statement about what occurred during that conversation?

Thank you.

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
|☎: 412.647.2410 | 📠: 412.647.4702 | ✉: ledfordm@upmc.edu

**UPMC** LIFE CHANGING MEDICINE

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://sps.upmc.com/psd/home/Admin/psdhr/default.aspx and add it to your favorites for easy retrieval.

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s).

**From:** Mathews, Sam K
**Sent:** Tuesday, June 03, 2014 9:49 AM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message



PLAINTIFF'S
EXHIBIT

1

Meghan:

I can talk to you by phone on Tuesday afternoon. I am trying to set an appointment with a foot doctor (I have an unknown foot injury)

Sam Mathews

**From:** Ledford, Meghann
**Sent:** Tuesday, June 03, 2014 9:32 AM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

I apologize, something came up today. Will tomorrow afternoon at 2 work? Is your office in the Kauffman building near Janet's?

Thank you

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
|☎: 412.647.2410| 🖷: 412.647.4702 | ✉: ledfordm@upmc.edu

# UPMC CHANGING

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more. Click http://spis.upmc.com/psd/home/Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s)

**From:** Mathews, Sam K
**Sent:** Monday, June 02, 2014 2:14 PM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

I am off next Tuesday afternoon and will be happy to call you.

**From:** Ledford, Meghann
**Sent:** Monday, June 02, 2014 2:10 PM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message
**Importance:** High

Sam,

I would to set up meeting time with you this week. I will come up to your office building at a convenient time for you. Please let me know ASAP when a good day is. I am open tomorrow morning and most of the day on Wednesday. Please let me know by the end of the day when a good time would be.

2

Thank you

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
| ☎: 412.647.2410 | 📠: 412.647.4702 | ✉: ledfordm@upmc.edu

# UPMC CHANGING

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://spls.upmc.com/psd/home/ ihhm/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s).

**From:** Mathews, Sam K
**Sent:** Thursday, May 29, 2014 4:27 PM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

Good afternoon, Meghann. I thank you for your efforts to reach out to me, and apologize for not getting back to you sooner. I was, in the interim, quite concertedly involved in discussions with advisors who I felt were interested in my welfare both personally and professionally since we spoke telephonically. At this time, I have been advised to not have any further conversations on this matter with anyone. I have been advised to carry out my assigned duties diligently and to the best of my abilities, which I intend to do.

If you do need to communicate with me about any matter regarding my concerns as I presented to you, please do so via e-mail. I would also be perfectly happy to listen to whatever you have to say by telephone at a time of your choosing, but cannot, under advisement, respond to your statements.

Once again, I appreciate the time you did spend with me.

Thank you.

Sam Mathews

**From:** Ledford, Meghann
**Sent:** Thursday, May 29, 2014 8:39 AM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

Good Morning Sam,

We still need to set up a time to talk. Are you available today or tomorrow morning?

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*

3

3600 Forbes Ave.
Pittsburgh, PA 15213
| ☎: 412.647.2410 | 🖷: 412.647.4702 | ✉: ledfordm@upmc.edu

# UPMC LIFE CHANGING MEDICINE

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://sps.upmc.com/psd/home/Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the
contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the
personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-
mail and delete the original e-mail and attached document(s)

**From:** Mathews, Sam K
**Sent:** Friday, May 23, 2014 2:39 PM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

Meghann:

Would I be correct in understanding that you have spoken to Janet in the interim?  I have felt direct repercussions since
my telephone conversation with you and believe that a telephone interview would be counter-productive.  Since Janet
encouraged/challenged me in the first place, to bring this to HR's attention and since she now has been told I did ( I am
assuming that), I'd ask for a direct meeting with you. I would be happy to meet at 8 am any day you choose and for Janet
to be told officially that I am being invited to a meeting, so that it is not perceived or recorded as time I am away from
my work station.

Please advise.  Thank you.

Sam Mathews

**From:** Ledford, Meghann
**Sent:** Friday, May 23, 2014 2:30 PM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

Good afternoon Sam,

I would like to talk again.  Would you be able to set up something again next week at 8am?

Thanks!

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
| ☎: 412.647.2410 | 🖷: 412.647.4702 | ✉: ledfordm@upmc.edu

4



Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://spis.upmc.com/psd-home-Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s).

**From:** Mathews, Sam K
**Sent:** Wednesday, May 21, 2014 9:00 AM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

Meghann:

I understand that they will be relocating us back to Lawrenceville in July so moving that chair now may not be practical.

Sam Mathews

**From:** Ledford, Meghann
**Sent:** Tuesday, May 20, 2014 1:40 PM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

Ok sounds good.

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
| ☎: 412.647.2410 | 📠: 412.647.4702 | ✉: ledfordm@upmc.edu



Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://spis.upmc.com/psd-home-Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s)

**From:** Mathews, Sam K
**Sent:** Tuesday, May 20, 2014 1:39 PM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

Yes. I will call you from my cell phone after I get in to Oakland early right at 8 AM

**From:** Ledford, Meghann
**Sent:** Tuesday, May 20, 2014 1:37 PM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

Would you be able to do a call tomorrow morning at 8, before you get in?

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
|☎: 412.647.2410 | ≜: 412.647.4702 | ✉: ledfordm@upmc.edu

UPMC LIFE CHANGING MEDICINE

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://spis.upmc.com/psd/home/Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s).

**From:** Mathews, Sam K
**Sent:** Tuesday, May 20, 2014 1:37 PM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

8:30 to 4:30

**From:** Ledford, Meghann
**Sent:** Tuesday, May 20, 2014 1:36 PM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

What are your work hours?

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
|☎: 412.647.2410 | ≜: 412.647.4702 | ✉: ledfordm@upmc.edu



UPMC LIFE CHANGING MEDICINE

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more.
Click http://spis.upmc.com/psd/home/Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the

personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s).

**From:** Mathews, Sam K
**Sent:** Tuesday, May 20, 2014 1:36 PM
**To:** Ledford, Meghann
**Subject:** RE: I left you a phone message

Meghann:

I do not have a private office here and wonder how I would go about setting a private appointment with you.

**From:** Ledford, Meghann
**Sent:** Tuesday, May 20, 2014 1:34 PM
**To:** Mathews, Sam K
**Subject:** RE: I left you a phone message

Hi Sam,

Let me know when a good time for to talk would be. I'm available tomorrow afternoon anytime.

*Meghann Ledford*
*HR Consultant*
*Physician Services Division*
*Iroquois Building/Suite 502*
*3600 Forbes Ave.*
*Pittsburgh, PA 15213*
| ☎: 412.647.2410 | 📠: 412.647.4702 | ✉: ledfordm@upmc.edu

# UPMC LIFE CHANGING MEDICINE

Remember to check out the PSD Human Resource SharePoint site for updates, employee recognition forms, calendars of events and more. Click http://spis.upmc.com/psd/home/Admin/psdhr/default.aspx and add it to your favorites for easy retrieval!

This e-mail may contain confidential information of the sending organization. Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this e-mail and attached document(s) is prohibited. The information contained in this e-mail and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify the sender immediately by e-mail and delete the original e-mail and attached document(s).

**From:** Mathews, Sam K
**Sent:** Monday, May 12, 2014 8:28 AM
**To:** Ledford, Meghann
**Subject:** I left you a phone message

Meghann:

I called on Friday, May 9th and left a message for you regarding a situation at work that I am grappling with that I feel I must seek counsel and assistance with. I was told that you are my assigned HR consultant. I understand that you will be on vacation till the 20th of May. Please contact me at the earliest upon your return.

Thank you.

**Sam Mathews**
Intermediate Financial Analyst

7

Ortho-Peds

Department of Pediatrics
4401 Penn Avenue
AOB 1st Floor, Suite 1300
Room 1311
Pittsburgh, PA 15224
412-692-6499

Department of Orthopaedic Surgery
3471 Fifth Avenue
Lillian Kaufmann Bldg. Suite 1011
Pittsburgh, PA 15213
(P)412-605-3259
(F)412-687-0802

**Sam Mathews**

| | |
|---|---|
| **From:** | Storer, Janet M. <storjm2@UPMC.EDU> |
| **Sent:** | Monday, May 12, 2014 9:57 AM |
| **To:** | Mathews, Sam K |
| **Subject:** | RE: JS UPP15 FY15 CARDHOLDER WORKSHEET.xlsx |

My email response was incorrect as I just told you. When I read this I thought we had been over this enough times that you understood. When you created the cme schedule for Ortho some time ago we discussed this issue. I also spoke to you last week about the account numbers to check for Ortho staff dues. I was very clear that medical staff dues should be deducted from the CME allowance for Ortho and Peds.   I don't understand the need to continue this conversation regarding such a simple matter.

Thanks,

Janet

**From:** Mathews, Sam K
**Sent:** Monday, May 12, 2014 9:53 AM
**To:** Storer, Janet M.
**Subject:** RE: JS UPP15 FY15 CARDHOLDER WORKSHEET.xlsx

My recollection....and then verified again from your e-mail response to me on Friday was that Ortho had always treated Med Staff Dues as a Departmental expense that was a budgeted item. I have only been privy to discussions that what Peds was doing in charging to CME was a contradiction of UPMC policy, but would not change for FY14 since it was not budgeted in Peds for FY14. I was also told that this practice for Peds going forward would be discontinued and PEDS CME would be reduced for Med Staff Dues at the outset. This is the reason I wanted the Ortho issue clarified in my e-mail of Friday the 9th.

In any case, this can and will be included in my final spreadsheet that I will have for you by end of the day on Wednesday for both Ortho and Peds.

**From:** Storer, Janet M.
**Sent:** Monday, May 12, 2014 9:42 AM
**To:** Mathews, Sam K
**Subject:** RE: JS UPP15 FY15 CARDHOLDER WORKSHEET.xlsx

Why did you think that?  I know on several occasions we had discussed that Ortho is the same as peds and that the med staff dues needs to be deducted from the CME allowance.  Not sure where you got your impression.

Janet

**From:** Mathews, Sam K
**Sent:** Monday, May 12, 2014 9:40 AM
**To:** Storer, Janet M.
**Subject:** RE: JS UPP15 FY15 CARDHOLDER WORKSHEET.xlsx

That is a correction, then. I was under the impression that in Ortho, Med Staff Dues was a budgeted departmental expense and therefore not to be deducted.

I will deduct in the final report I will have for you before the end of the day on Wednesday.

PLAINTIFF'S EXHIBIT

1

Sam

**From:** Storer, Janet M.
**Sent:** Monday, May 12, 2014 9:37 AM
**To:** Mathews, Sam K
**Subject:** RE: JS UPP15 FY15 CARDHOLDER WORKSHEET.xlsx

Just rereading this email.  I thought I had told you to deduct dues from CME for Ortho.

Question #3.  You need to deduct dues from the CME allowance for Ortho as well as Peds.  THEY SHOULD BE DEDUCTED.

Janet

**From:** Mathews, Sam K
**Sent:** Friday, May 09, 2014 11:10 AM
**To:** Storer, Janet M.
**Subject:** JS UPP15 FY15 CARDHOLDER WORKSHEET.xlsx

Janet:

This is a work in progress while I collect additional data.

Do I understand correctly that:

1. Fellows and residents get $1 to start?
2. That Drs. Fu and Goitz don't get their entire allotments loaded up at the beginning of the year?
3. That all Med Staff Dues are already budgeted for and so not deducted from their allowance as would be the case in Peds?

Note that I am following up on details for all new folks added on this if available and will delete if all info is not available.

Sam

## Sam Mathews

**From:**       Storer, Janet M. <storjm2@UPMC.EDU>
**Sent:**       Thursday, June 12, 2014 10:43 AM
**To:**         Mathews, Sam K
**Cc:**         Hutson, Paula; Ledford, Meghann
**Subject:**    Meeting schedule for next week

Sam,

Just want to confirm times for our meeting next week.  Thursday is the Pirate game so we moved the meeting to Friday.

Tuesday June 17th at 3pm and Friday June 20th at 9am.

Thanks,

Janet

Janet Storer
Finance Manager
Department of Pediatrics and Orthopaedic Surgery
University of Pittsburgh Physician Service
Lillian Kaufmann Bldg. Suite 1011
3471 5th Avenue
Pittsburgh, PA 15213
Phone:  412-605-3295
Fax:  412-687-0802

This email may contain confidential information of the sending organization.  Any unauthorized or improper disclosure, copying, distribution, or use of the contents of this email and attached document(s) is prohibited.  The information contained in this email and attached document(s) is intended only for the personal and confidential use of the recipient(s) named above.  If you have received this communication in error, please notify the sender immediately by email and delete the original email and attached document(s).



PLAINTIFF'S
EXHIBIT

included in the meeting. My point here is that as your direct management team I feel it is imperative to include them in the conversation. They understand the assignments, workload and direction provided and having this perspective during our conversation will ensure were are not moving down a he said / she said path in which benefits no one.

If you would still like to meet based on my points above please let me know and I will have my assistant schedule ASAP this week.

Thanks,

Brian

**From:** Mathews, Sam K
**Sent:** Sunday, June 15, 2014 5:32 PM
**To:** Fritz, Brian
**Subject:** May I ask

Brian:

May I ask for 30 minutes of your time? I understand that you've heard various things about me and my situation but what transpired on Thursday 6/12/14 leads me to believe that a significant amount of confusion has been sowed and I would sincerely like to ask for some direction and counsel.

If a meeting would not be entirely futile, I am requesting 30 minutes of your time. Please advise.

Thank you.

Sincerely
Sam Mathews.



**m Mathews**

| | |
|---|---|
| **From:** | Mathews, Sam K <mathewssk@upmc.edu> |
| **Sent:** | Monday, June 16, 2014 12:24 PM |
| **To:** | Fritz, Brian |
| **Subject:** | RE: May I ask |

Brian:

I thank you for taking the time to respond.

I am, actually, quite relieved that a plan of some sort has been initiated for my training and development where there has been none in the last 11 months. It is not my intention to challenge anything at all within the performance plan as presented, but to fill in some critical facts that were omitted. There are several issues within the "background" of that document that I feel have been misconstrued that I would like a chance to elaborate on. I certainly would like to meet to focus on the game plan with a clearer understanding of the metrics that will be used for measurement as these were not clarified. As it stands currently, however, it would appear that my very next mistake will be grounds for termination. I hold no animosity toward Janet and know the challenges that she deals with on a day-to-day basis and realize that she has to make judgments under pressure of time and other commitments. I do believe though, that her conclusions on my performance to date have been based on incomplete information. I would ask for 30 minutes with you and would not have any concerns about both Paula and Meghann being present for the meeting. This will help me express my sentiments without emotion and with clarity in a neutral environment.

Please understand that mine is not a personal ax to grind about Janet Storer, and I promise you that my intent is not to criticize her nor to undertake any "he said/ she said" dialog, but certainly to elaborate on some facts that were not in the document as created by Janet nor as presented to me on June 12th. Please note that I have made several attempts to clarify these to Janet, but unsuccessfully. I would hope that at the end of the conversation, that I can be positioned better to help Janet accomplish her agenda as she manages the Ortho-Peds pod and that I can be a contributing member of her team. If, however, you insist that Janet is present, I will have no choice but to accept your stipulation.

Thank you.

Sam Mathews

**From:** Fritz, Brian
**Sent:** Monday, June 16, 2014 11:45 AM
**To:** Mathews, Sam K
**Subject:** RE: May I ask


PLAINTIFF'S EXHIBIT
5

Sam

I am advised the performance plan is actually a plan to move forward which Janet and Meghann discussed with you last week. Janet and I are contractually in conversation on the activities within the Pod and this was a topic of conversation. I am interested in your comments that confusion has been sowed as to the point of others sold in the plan were specific and well documented. I do understand that having the formality of a performance plan placed in front of you can be stressful. You as the receiver of the plan believe this can't be me they are talking about. I am ok with meeting to address your concerns however to be clear I am supportive of the documentation and plan in place. If you would like to meet to focus on the game plan to achieve the improvement points I think that would be a very effective use of time. If you would like to meet to challenge what is included within the plan I would advise that is probably not the best use of either of our time. Additionally if we are to meet I would like to ensure Janet and Paula are

.uded in the meeting.  My point here is that as your direct management team I feel it is imperative to include them in
e conversation.  They understand the assignments, workload and direction provided and having this perspective
during our conversation will ensure were are not moving down a he said / she said path in which benefits no one.

If you would still like to meet based on my points above please let me know and I will have my assistant schedule ASAP
this week.

Thanks,

Brian

**From:** Mathews, Sam K
**Sent:** Sunday, June 15, 2014 5:32 PM
**To:** Fritz, Brian
**Subject:** May I ask

Brian:

May I ask for 30 minutes of your time?  I understand that you've heard various things about me and my situation but
what transpired on Thursday 6/12/14 leads me to believe that a significant amount of confusion has been sowed and I
would sincerely like to ask for some direction and counsel.

If a meeting would not be entirely futile, I am requesting 30 minutes of your time.  Please advise.

Thank you.

Sincerely
Sam Mathews.

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  K. Samuel Mathews
     2617 Patrice Court
     Murrysville, PA 15668

From:  Pittsburgh Area Office
       1000 Liberty Avenue
       Room 1112
       Pittsburgh, PA 15222

[ ]  *On behalf of person(s) aggrieved whose identity is*
     *CONFIDENTIAL (29 CFR §1501.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 533-2014-01109 | Legal Unit<br>Philadelphia District Office | (215) 440-2828 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA): This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[X]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Roosevelt H. Bryant*          6-17-16

Roosevelt L. Bryant,                    *(Date Mailed)*
Director

Enclosures(s)

cc:  Andrea Clark Smith
     VP, Employee Relations
     UPMC HEALTH SYSTEM
     U S Steel Tower, Floor 57
     600 Grant Street
     Pittsburgh, PA 15219

Rolf Patberg
Patber and Carmody
801 Vinial St., #3
Pittsburgh, PA 15212

PLAINTIFF'S
EXHIBIT
6

## SHERIFF RETURN

**Case No :**            GD-16-010957
**Case Description :**   Mathews vs University of Pittsburgh Physicians
**Defendant :**          University of Pittsburgh Physicians
**Service Address :**    3600 Forbes Avenue Pittsburgh, PA 15213 Allegheny/4
**Writ Description :**   COMPLAINT
**Issue Date :**         6/20/2016

**Service Status :**     Served - Envelope Returned
**Served Upon :**        Nancy DeRiggi
**Served By :**          Neil Hall
**Served on :**          Wednesday, July 6, 2016 at 12:20
**Service Method :**     Personal

Kuzhikalayih Mathews

vs

University of Pittsburgh
Physicians

