IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

KUZHIKALAYIH MATHEWS
aka Samuel "Sam" Mathews,

                    Plaintiff,

v.                                                            Case No. 2:16-CV-1148-MAK

UNIVERSITY OF PITTSBURGH PHYSICIANS
aka UPP, INC,

                    Defendant.

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendant UPP, Inc, (UPP) submits this memorandum of law in support of its Motion for

Summary Judgment.

## I.  BACKGROUND

This is an age and national origin discrimination and retaliation lawsuit stemming from

Plaintiff's discharge as a financial analyst for UPP in July 2014.   Plaintiff filed a charge of

discrimination on December 16, 2014, with the Equal Employment Opportunity Commission

(EEOC) and the Pennsylvania Human Relations Commission (PHRC).   The EEOC issued a

Notice of Right to Sue on June 17, 2016.   Plaintiff filed this lawsuit on June 20, 2016, in the Court

of Common Pleas of Allegheny County.   *Complaint, ¶¶ 1-127 [Dkt 1-2]*.   Defendant removed

the case to the United States District Court for the Western District of Pennsylvania on July 29,

2016, *Notice of Removal [Dkt 1]*, and filed its Answer to Complaint on August 25.   *Answer to*

*Complaint [Dkt 8]*.

**Count I** of the Complaint alleges age discrimination under the Pennsylvania Human

Relations Act (PHRA), 43 Pa. Cons. Stat. §951, *et seq*.   **Count II** alleges "Ethnicity/Racial Discrimination" under the PHRA.   **Count III** alleges age discrimination under the Americans With Disabilities Act (ADEA), 29 U.S.C. §§ 621, *et seq*.   **Count IV** alleges retaliation under the ADEA.   **Count V** alleges "Ethnicity/Racial Discrimination" retaliation and harassment under the PHRA.   **Count VI** alleges retaliation under the ADEA.   **Count VII** alleges violation of Title VII of the Civil Rights Act of 1964 (Title VII), , 42 U.S.C. §§ 2000e, *et seq*.   The parties have completed discovery and Defendant now moves for summary judgment on all claims.[1]

## II.   STATEMENT OF FACTS

Pursuant to Local Civil Rule 56, Defendant has filed a separate and Concise Statement of Material Facts in support of the motion and this memorandum.   Defendant's Statement describes the material facts as to which there is no genuine issue to be tried, and cites to the record evidence for those facts, whch is listed and included in Defendant's Appendix in Support of Summary Judgment, also filed with the motion, the Statement of Concise Facts, and this brief.[2]

Plaintiff was hired by UPP in 2001 as a Financial Analyst, and he was discharged on July 29, 2014.   The critical events center on the period of January to July of that year, when Plaintiff started a new job and faced serious performance problems and conflict with coworkers and managers, and that culminated in his being placed on a Performance Improvement Plan (PIP) in June, and his discharge at the end of July.

---

[1] Pennsylvania courts apply the same analysis to discrimination and retaliation claims under the PHRA as federal courts do under Title VII and the ADEA, so Defendant will not separately address the PHRA claims.   *Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535 (3d Cir. 2006) ("We construe Title VII and the PHRA consistently"); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts … generally interpret the PHRA in accord with its federal counterparts [including Title VII and the ADEA]").

[2] Citations to the record in this brief will appear in italics and refer to the record item by name and internal page or paragraph number, as well as to the consecutive page numbers in Defendant's Appendix in Support of Motion for Summary Judgment.   The individual record items are listed at the beginning of the Appendix and appear behind numbered tabs in the Appendix.   The Appendix pages have been numbered sequentially.

### III.   ARGUMENT

#### A.   The Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Pursuant to Rule 56, the Court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   To avoid summary judgment, the opposing party must point to specific, affirmative evidence in the record and not simply rely on mere allegations, conclusory or vague statements, or general denials in the pleadings.   *Celotex*, 477 U.S. at 324.

#### B.   Age Discrimination (Counts I and III)

Plaintiffs alleging violation of the ADEA may proceed by pointing to direct evidence of a discriminatory motive, or by pointing to sufficient circumstantial evidence to satisfy the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).   As shown below, Plaintiff's age claim in the present case fails as a matter of law under both approaches.

##### *(1)   No Direct Proof of Age Discrimination*

To establish unlawful discriminatory intent with direct evidence, plaintiffs must show "direct evidence that decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision."   *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *see also Garcia v. Newtown Twp.,* 483 F. App'x 697, 704 (3d Cir.

2012) ("As a practical matter, only rarely will a plaintiff have direct evidence of discrimination") (internal quotation omitted).   "Stray remarks" in the workplace do not qualify as direct evidence of discrimination.  *Id.; Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 545 (3d Cir. 1992).   Neither statements by non-decision-makers, nor statements by decision makers unrelated to the decisional process itself, satisfy a plaintiff's burden on direct evidence.   *Id.*

Here, Plaintiff cannot point to direct evidence of a discriminatory reason for his discharge. There is no evidence of age-related comments or actions.   There is only Plaintiff's assumption that because his manager allegedly was hostile toward him, it must have been his age, because Plaintiff couldn't think of any *other* reason.[3]   *Mathews Depo. Tr. P78/L25 - P79/L5, P145/L5-L12 [App 177, 193]*.   Plaintiff must, therefore, establish his claim by resort to indirect, or circumstantial, evidence under the *McDonnell Douglas* analysis.

### (2)   No Indirect Proof of Age Discrimination (McDonnell Douglas)

To avoid summary judgment under the indirect framework of *McDonnell Douglas*, Plaintiff must first show a *prima facie* case.   If he succeeds with that, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for discharging Plaintiff.   *Id.* Plaintiff must then demonstrate that the reasons given by Defendant for such treatment are merely a pretext for unlawful employment discrimination.   *Id.*   At all times, Plaintiff retains the burden of persuasion to show that age was the "but for" cause of his discharge.   *Gross v. FBL Fin. Servs.*, 557 U.S. 157, 176 (2009).

---

[3] Plaintiff cites two events that he interprets as being based on his age (and national origin), but it is undisputed that *neither* makes any specific or even veiled references to Plaintiff's age.   They are the failure to invite Plaintiff to a farewell luncheon for a secretary in the department, and the delayed invitations to have leftover food from catered meetings that had concluded in the office conference room.   Both allegations are discussed more fully below, *see infra pp. 13-14*, but neither can serve as direct evidence.

### *(a)   Prima Facie Case*

To establish a *prima facie* case of age discrimination under the ADEA, Plaintiff must show that: (i) he is 40 years of age or older; (ii) Defendant terminated his employment; (iii) Plaintiff was qualified for the position in question; and (iv) Defendant replaced Plaintiff with a younger employee.   *McDonnell Douglas Corp.,* 411 U.S. 792 (1973); *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).   For purposes of this motion only, Defendant will assume Plaintiff can satisfy his initial burden to state a *prima facie* case of age discrimination.

### *(b)   Legitimate Nondiscriminatory Reason*

The burden on defendants at this stage of the *McDonnell Douglas* analysis is satisfied when a defendant introduces evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for plaintiff's discharge.   *Willis,* 808 F.3d at 644; *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).   The employer's burden at this stage is relatively light. *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 500-501 (3d Cir. 1997).

Defendant in the present case has articulated several legitimate nondiscriminatory reasons for discharging Plaintiff.   That is, Plaintiff's ongoing performance deficiencies and failures, beginning in January 2014 and continuing to the date of his discharge, as well as Plaintiff's failure to complete the PIP successfully, and his behavior toward his manager, Janet Storer, throughout that seven-month period, and his behavior during the PIP.   Brian Fritz summarized it as follows:

> Sam's inability to perform or quickly learn the duties that Kathy Osterrieder had tried to show him in January 2014, his refusal to cooperate with Pam Walsh when she was trying to train him to take over her old job duties in January 2014, his specific performance failures reported to me by Janet Storer and Paula Hutson, and shown in the PIP documents, and Sam's argumentative, hostile, angry manner of dealing with Janet Storer proved too much for us to overcome.   Any one of those things would have been sufficient, in and of itself, to warrant Sam's discharge.   Taken together, they

really left us with no other choice.

*Fritz Affidavit ¶ 53 [App 13]*.   These are undeniably legitimate nondiscriminatory reasons.

### (c)   Proof of Pretext

To prove pretext, Plaintiff must offer evidence "from which a factfinder could reasonably either (i) disbelieve the employer's articulated legitimate reasons; or (ii) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."   *Fuentes,* 32 F.3d at 764; *Willis*, 808 F.3d at 644-45.   These two "prongs" of the pretext analysis are discussed below.

### (i) First Prong for Proving Pretext

Prong one of this analysis requires Plaintiff to point to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendant's stated reasons for his discharge. *Willis,* 808 F.3d at 644 (quoting *Fuentes,* 32 F.3d at 762).   To discredit the employer's proffered reason for discharge, the plaintiff must present evidence from which a rational factfinder could determine that the reason was "unworthy of credence."   *Id.* at 648.

The focus of this inquiry is *not* on whether the employer was *correct* in its assessment of the reasons for discharge, or even whether it made a good or prudent decision.   Rather, the focus is on whether Defendant actually *believed* the reasons for the discharge.   *See Fuentes,* 32 F.3d at 765; *Willis,* 808 F.3d at 647; *see also Geddis v. Univ. of Delaware,* 40 Fed.Appx. 650, 653 (3d Cir.2002) (finding that an inadequate investigation is not sufficient to show that the plaintiff was terminated for discriminatory reasons)*; Jackson v. Bob Evans,* 2006 U.S. Dist. LEXIS 101678 *24 (W.D. Pa. Dec. 4, 2006) ("[S]o long as Defendant's investigation and determination was based on a reasonable, good faith belief, the Court may not act as a super-personnel department over an employer's business judgment.").

This case boils down to the fact that Plaintiff vehemently disagreed with Defendant and its managers as to what his job duties should have been, whether he was performing them properly, and whether he should have been given different job duties in January 2014 and following.   *Fritz Affidavit ¶¶ 19, 24, 25, 44, 45, 46, 47, 52, 54 [App 6, 7, 11, 12-13]; Kunicky Affidavit ¶¶ 23, 24 [App 83-84]; Storer Affidavit ¶¶ 13, 14 [App 152]; Mathews Depo. Tr. P150/L18 - P151/L3 [App 195].*   However, the law is clear that an employer is entitled to exercise its own business judgment as to how to run its business, whom to hire and fire, and what job duties to assign to various employees, and the fact that an employee disagrees with the outcome of that judgment does not constitute it as unlawful discrimination or otherwise render it unlawful.   *Conine v. SEPTA*, 2005 U.S. Dist. LEXIS 10453, at *25 (E.D. Pa. March 17, 2005) ("Courts do not sit as super-personnel departments that reexamine an entity's business decisions … Employers are free to exercise their business judgment to identify the skills most desirable for an employee in a given employment position, even where that judgment is not wise or prudent.") (internal citations omitted).   *See also, Kautz v. Met-Pro Corp.,* 412 F.3d 463, 468 (3rd Cir. 2005); *Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3rd Cir. 1998); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1109 (3rd Cir. 1997).[4]

It is undisputed that Brian Fritz was the ultimate decision maker on Plaintiff's discharge, based on his own investigation and analysis of Plaintiff's job performance and behavior, but also relying on the independent investigation and advice by John Kunicky.   *Fritz Affidavit ¶¶ 21, 22,*

---

[4] *See also, Fuentes,* 32 F.3d at 765 (to discredit employer's reason for discharge, "plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."); *Willis,* 808 F.3d at 647 ("[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination].") (alteration in original, internal quotation omitted); *See also, Ruff v. Temple Univ.*, 122 F. Supp. 3d 212 (E.D. Pa. 2015) (Kearney, J.) ("We do not decide whether the university made the best choice in employee promotion, only whether the aggrieved employee adduced evidence allowing a jury to find the university's grounds are pretext for race discrimination.").

*40, 41, 42, 48, 49, 50, 52 [App 6, 10, 11, 12, 13]; Kunicky Affidavit ¶¶ 2,18 [App 79, 82]*.   It is also undisputed that Fritz believed that Plaintiff's job performance and behavior compelled the decision to terminate Plaintiff's employment, and that Plaintiff's failure to complete the PIP as expected only compounded the necessity of terminating Plaintiff's employment.   *Fritz Affidavit ¶¶ 52, 53 [App 13]*.   It was not just Sam's substantive performance failures, but also the way he argued incessantly about his job performance:

> Sam always seemed to have an excuse or explanation, but it always seemed to miss the point.   In that manner, it took up time and energy and effort of everyone involved, just to try to show him he was missing the point.   That exhausting way of dealing with his performance problems also was sufficient, in and of itself, to warrant his discharge.   He simply used way too many resources, in terms of the time, energy, and patience of his managers, so that he compounded the substantive performance deficiencies.

*Fritz Affidavit ¶ 54 [App 13-14].*

Plaintiff always seemed to have an excuse and an explanation, but they also always seemed to miss the point.   Plaintiff just couldn't get past the fact the *he* didn't believe he had performance or behavior problems.   *Fritz Affidavit ¶¶ 52, 53 [App 13]; Storer Affidavit ¶¶ 23, 24 [App 154]; Mathews Depo. Tr. P150/L18 – P151/L2 [App 195]*.[5]   An illustration of this "blind spot" can be found in Plaintiff's own testimony:

> Q.   I'm not asking you if [Storer] was right.   I'm just saying you knew before this PIP that she had a problem with your performance? She might have been wrong in that, but she was having—
>
> A.   I did not know she had a problem with my performance because

---

[5] John Kunicky explained it thus:   "What we look for during the PIP is a recognition by the employee that there is a problem, and then sufficient change and improvement to warrant the belief that the employee eventually can return to or achieve full and satisfactory job performance. … That is what we tried to do with Sam Mathews, even to the point of escalating the matter to my level in Human Resources, and to Brian Fritz' level in Finance, but Mr. Mathews simply proved unable or unwilling to recognize the problem, turn his performance around, and get past the conflict with Janet Storer.   Basically, Mr. Mathews turned this whole unfortunate episode into an obsession with his dislike for Janet Storer, and he thwarted any opportunity he might otherwise have had for rehabilitation."   *Kunicky Affidavit ¶¶ 22-23 [App 83].*

> I had no problems with my performance.  She had a problem with me as a person, but my performance was never suspect in each of these issues.  I have offered an explanation on each of these issues to resolve the confusion that I perceived.  So, no, I did not know she had a problem with my performance at any time prior to this.

*Mathews Depo. Tr. P150/L18 – P151/L2 [App 195]*.

However, a plaintiff's subjective belief as to his own performance issues is not enough to get him past summary judgment.  *Gibson v. Sharon Reg'l Hosp. Sys.*, 2011 U.S. Dist. LEXIS 27941, at *44 (W.D. Pa. Mar. 18, 2011) (holding plaintiff's subjective belief about her performance was not pretext evidence, "rather, it is the employer's belief that governs").

Brian Fritz eventually realized he had no choice but to discharge Plaintiff:

> Ultimately, I concluded that Sam Mathews had never accepted that the PIP was needed, so he refused to cooperate in it, or he was not capable of doing what was being asked, so he masked that inability by being argumentative and hostile with Janet.  I could not tell for sure which it was, but in either event, it was clear he could not continue to work in the department as a financial analyst, so I decided he had to be discharged.

*Fritz Affidavit ¶ 52 [App 13]*.  This was the legitimate exercise of UPP's business judgment about how to run its business and manage its employees, and Plaintiff cannot challenge this simply because he disagrees with the exercise of that judgment.

This undisputed evidence is insurmountable for Plaintiff on summary judgment.  That is, the evidence of Brian Fritz's independent investigation and assessment, and that of John Kunicky, and of their good faith belief in their conclusions.  Plaintiff cannot adduce evidence from the record to refute or challenge this.

### (ii)  Second Prong for Proving Pretext

To show pretext under prong two of the pretext analysis, Plaintiff must point to record evidence that would allow a factfinder to believe that an invidious discriminatory reason was the

"but for" reason for his discharge.   *Fuentes,* 32 F.3d at 764; *Willis,* 808 F.3d at 645.   It requires Plaintiff to present evidence "with sufficient probative force" to allow the factfinder to conclude by a preponderance of the evidence that age was a determinative factor in the decision.   *Willis,* 808 F.3d at 645.   Plaintiff in the present case cannot do this.

To begin with, Plaintiff admits he has no basis to believe that Brian Fritz or John Kunicky were biased against him on account of his age or national origin:   "Not at all."   *Mathews Depo. Tr. P27/L7-L10 [App. 164].*   In fact, Plaintiff admitted that he has no basis to believe that Paula Hutson Tr. P, Meghann Ledford, Kathy Osterrieder, Pamela Walsh, Marina Goodman, or Jeffrey Martin were biased against Plaintiff on account of his age or national origin, *Mathews Depo. Tr. P26/L13 – P29/3 [App. 164].*   And he admitted that nobody else at UPP discriminated against him because of his age or national origin, *except* Janet Storer.   *Mathews Depo. Tr. P26/L13-L16, P29/L4-L9 [App. 164].*   All of those named individuals contributed to Plaintiff's discharge by offering their information or assessments about Plaintiff's job performance or behavior.[6]   *Fritz Affidavit ¶¶ 23, 24, 28, 43, 47, 49, 50, 51, 53 [App 6, 7, 8, 10, 12, 13]; Kunicky Affidavit ¶¶ 5, 6, 9, 20 [App 80, 81, 83]; Mathews Depo,. Tr. P186/L10 – P195/L3 [App 204].*   And as to Janet, Plaintiff's reasoning is not based on evidence, but on the *absence* of evidence.   That is, he couldn't figure out why Janet Storer had a problem with him, so he just picked discrimination:

> Q   Do you think it was related to the fact that you could not do Kathy Osterrieder's job or her work?
>
> A.   I don't know if it was that or because she saw a formidable, old brown man because that's the impression I got, that I intimidated her in some fashion.

---

[6] Marina Goodman did not actually contribute to Plaintiff's discharge ahead of time, but she conducted a thorough investigation in response to Plaintiff's post-termination grievance and concluded there was no discrimination or other wrongdoing in the treatment or discharge of Plaintiff.   *Mathews Depo. Tr. P195/L17 – P196/L3 [App. 206]; Mathews Depo. Exh. D-29.*

Q.  How did the brown come up in this and old?   …

A.  That's the only reason I can see why she might have had a problem with me.

*Mathews Depo. Tr. P78/L8-L25[App. 177].*

Plaintiff offers no pejorative comments or actions directed at his age.   Basically, Plaintiff says believes it was age discrimination because he can't think of any other reason for Janet Storer to have a problem with him.   *Mathews Depo. Tr. p. P78/L8-L25; P145/L5-L12 [App. 177].*

**C.   "Ethnicity/Racial Discrimination" National Origin (Counts II, V, VII )**

Plaintiff's Complaint does not clearly state the nature of this claim, except to suggest it is based on Plaintiff's being "Singaporean of Indian Descent."   For purposes of the present summary judgment motion, Defendant will treat this as a national origin claim, and will assume, for present purposes only, that Plaintiff is within the protected groups covered by national origin prohibitions of Title VII and the PHRA.   As with the ADEA claim discussed above, Plaintiff may prove national origin discrimination by direct evidence or by the indirect method of *McDonnell Douglas*. *Venter v. Potter*, 694 F. Supp. 2d 412, 421-22 (W.D. Pa. 2010).

*(1)   No Direct Proof of National Origin Discrimination*

In *Venter v. Potter*, 694 F. Supp. 2d 412 (W.D. Pa. 2010) (Conti, J.), a national origin and age discrimination case, the court explained direct evidence of discrimination:

> The *McDonnell Douglas* framework does not apply in an employment discrimination case in which direct evidence of discrimination is presented. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). "Direct evidence" of discrimination is evidence that is "so revealing of discriminatory animus that it is not necessary to rely on any presumption" from the plaintiff's prima facie case to shift the applicable burden of production to the defendant. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995). The evidence presented by Venter does not meet this standard.

694 F. Supp. 2d at 422 n. 6.   In the present case, Plaintiff is unable to produce evidence sufficient to as direct evidence for national origin discrimination.

Plaintiff does not have *any* direct evidence of national origin discrimination.   The only incidents he points to are the Pirates Game comment, the "Snazzy Dresser" comment, the Secretary Lunch, and the Conference Leftovers, which are described more fully below at pages 13-14. None of these makes any mention or even alludes to Plaintiff's national origin.   The closest thing, assuming she even said it, was the "great American pastime" comment by Janet Storer, but that is an absurd twisting of a very common colloquial phrase used in America to refer to baseball and going to a baseball game.   Even it were given the meaning Plaintiff suggests—that is, that it referred to the fact that Plaintiff is not from the United States—it was not obviously pejorative and could more easily be interpreted as a friendly comment and invitation to join in.

### (2)   *No Indirect Proof of National Origin Discrimination*

As with the age claim, to avoid summary judgment on his national origin claim under the *McDonnell Douglas* framework, Plaintiff must first show a prima facie case.   If he succeeds with that, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for discharging Plaintiff.   *Id.*   Plaintiff must then demonstrate the reasons given by Defendant for such treatment are merely a pretext for unlawful employment discrimination.   *Id.*   At all times, Plaintiff retains the burden of persuasion to show that national origin cause of his discharge. *Gross v. FBL Fin. Servs.*, 557 U.S. 157, 176 (2009).

### (a)   *Prima Facie Case*

The Third Circuit recently explained the prima facie case of national origin discrimination under Title VII:

> A prima facie case of discrimination based on skin color or national origin requires that a plaintiff show the following: (1) she belongs to a protected class; (2) she is qualified for the position; (3) she suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.

*Paradisi v. Englewood Hosp. Med. Ctr.*, 2017 U.S. App. LEXIS 3366, *9-10 (3d Cir. Feb. 27, 2017) (*citing St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).   *See also LaRochelle v. Wilmac Corp.*, 2016 U.S. Dist. LEXIS 133135, *58-59 (E.D. Pa. Sep. 27, 2016) (Stengel, J.) (proof framework for national origin discrimination is the same as for Title VII sex discrimination).

Defendant will assume for summary judgment purposes that Plaintiff can show the first three elements of a prima facie case of national origin discrimination.   However, Plaintiff cannot get past the fourth requirement.   Consequently, Plaintiff's national origin claim fails as a matter of law, before it reaches the question of legitimate nondiscriminatory reason or pretext.

Plaintiff offers four incidents that he claims support the allegation of national origin discrimination, but it is undisputed that none refers to Plaintiff's age or national origin.   They are merely events that Plaintiff surmises carry a national origin meaning.   These are referred to as the "Pirates Game," the "Snazzy Dresser," the "Secretary Lunch," and the "Conference Leftovers."

The Pirates Game comment arises from an outing UPP held at a Pittsburgh Pirates game on June 19, 2014.   This was the week after Plaintiff's PIP was implemented, and Janet Storer had scheduled meetings with Plaintiff for that week, including June 19, as part of the PIP process. When she realized it was the day of the Pirates outing, she sent an email to Plaintiff letting him know she rescheduled their June 19 meeting to the following day so as not to interfere with the

-13-

Pirates game.  Plaintiff alleges in his complaint that Janet Storer then asked Plaintiff later that same day (June 12) if he was going to the Pirates game, and Plaintiff said he had a previous commitment.  Complaint ¶ 43.  Plaintiff alleges that Storer responded that she was not surprised he was not interested in "the great American past time."  Complaint ¶43.  Plaintiff further alleges in his Complaint that Storer was "inferring that because of [Plaintiff's] national origin, he was not attending his work function."  Complaint ¶ 43.

In his deposition, Plaintiff testified that Janet asked him on the day of the game (one week later) if he was going to the game, and he testified that her precise phrase was set forth in the Complaint.  *Mathews Depo. Tr. P57/L21 – P58/L5 [App 171]*.  Plaintiff admits that Janet made no reference at all to Plaintiff's color or national origin when she said this.  *Mathews Depo. Tr. P58/L15-L17 [App 172]*.  Janet Storer categorically denied making any derogatory comment about Plaintiff relating to a Pirates game.  *Storer Depo. Tr. P101/L7-L12 [App 239]*.

The Snazzy Dresser comment was alleged in Plaintiff's Complaint.  Complaint ¶ 81.  Plaintiff alleges that "[d]uring the course of Mathew's employment, Janet Storer made a comment on Naveed Ismal stating, 'now that's an Indian I don't mind working with.  Plus Dr. Fu thinks he is a snazzy dresser."  *Id*.  Plaintiff testified about this at his deposition, but alleged then that Janet was not making the comment herself, but was quoting Dr. Freddie Fu, the Chairman of the Orthopedic Surgery Department.  *Mathews Depo. Tr. P59/L17 – P60/L5 [App 172]*.  Naveed Ismail was a financial analyst who was a candidate for a special rotation program that would bring him into Janet Storer's group for about six months, and then he would move on to another department.  *Storer Depo. Tr. P26/L7-L20 [App 220]; Mathews Depo. Tr. P59/L13 – P62/L16 [App 172]*.

The Secretary Lunch was not alleged in Plaintiff's Complaint, but he raised it at his

-14-

deposition.  *Mathews Depo. Tr. P170/L20-L24 [App 200]*.   He also had raised it with Janet Storer, Meghann Ledford, and Paula Hutson in a meeting in July 2014.  *Storer Depo. Tr. P32/L 11-L22 [App 221]*.   Plaintiff accused Storer of deliberately excluding him from a farewell lunch for a secretary in the department.  *Id*.   Janet told Plaintiff at the 2014 meeting that she knew nothing of the lunch, was not involved in planning it or inviting people to it, and did not attend the lunch herself.  *Id*.   Plaintiff was vague about this incident in his deposition testimony, and it seemed to bleed into an unrelated office security issue, and then Plaintiff acknowledged he did not know if Janet had gone to the lunch.  *Mathews Depo. Tr. P170/L25 – P171/L20 [App 200]*.

The Conference Leftovers matter also was not alleged in Plaintiff's Complaint, but he brought it up at his deposition.   He alleged that Janet Storer deliberately delayed telling him, until the last minute, when there was leftover food in the conference room from a catered meeting. Plaintiff alleges Janet deliberately did this of his age and national origin.  *Mathews Depo. Tr. P196/L3 – P197/L4 [App 206]*.   Plaintiff acknowledged that Janet did, in fact, tell him about the food, saying "Sam there's food available," but that sometimes she would simply not tell him "until the last minute."  *Mathews Depo. Tr. P196/L14-L17 [App 206]*.

The four incidents are the entirety of Plaintiff's evidence of discrimination against him on account of age and national origin or race.   Even if all four actually occurred exactly as Plaintiff alleges, they make no mention of Plaintiff's age or national origin, and they do not rise to the level required to meet the fourth element of the prima facie case.

In *Parker v. Sec'y United States Dep't of Veterans Affairs*, 2017 U.S. App. LEXIS 987 (3d Cir. Jan. 19, 2017), a national origin discrimination, retaliation, and hostile environment case, the Third Circuit affirmed summary judgment for the employer on the national origin discrimination claim, on the ground the employee failed to meet the fourth element in the prima facie case:

with regard to the fourth factor, we agree with the District Court's conclusion that Parker failed to provide support beyond mere suspicion for the inference that any of the alleged adverse actions taken against her were motivated by her race or national origin. During her AIB testimony, Parker stated that "the black people call me African girl," and discussed her belief that "the slave mentality in Coatesville is too heavy," but failed to give any examples of national origin-based slurs or comments made by specific VA staff members, or that this bias motivated the adverse actions she alleged. Moreover, in her deposition for this case, Parker repeatedly refused to specifically identify any evidence of race or national origin discrimination, responding only vaguely that the papers "are my evidence," "you have the evidence folders," "I come up with the evidence," and that she would "leave it up to the jury." As a result, the District Court properly granted summary judgment for McDonald as to this issue.

2017 U.S. App. LEXIS 987, *8-9 (footnote omitted).

In the *Paradisis v. Englewood* case, the Third Circuit again affirmed summary judgment

because the plaintiff had failed to satisfy the fourth element of the prima facie case:

Paradisis did not provide competent evidence to show that her brown skin color and/or Puerto Rican heritage was the motivating force behind the three adverse employment actions. We thus agree with the District Court that she did not satisfy the fourth element of a prima facie case of discrimination for any of these adverse employment actions. Paradisis' evidence of unlawful discriminatory treatment was scant indeed. She testified in her deposition that, in November 2012, upon meeting her for the first time, Patient Care Director George said "Oh, you're Kim Paradisis? I pictured you big and tall." She further testified that, at a meeting on May 2, 2013 to discuss the requested training (and other issues), Ann Marie Shears, the Vice President of Clinical Services, "mouthed" to her "[w]hy don't you pay for it yourself," and "[y]ou people want everything handed to you." She testified that, at the close of the meeting, Shears gave her a handshake that was much too hard. None of this even remotely demonstrates that the adverse employment actions occurred under circumstances giving rise to an inference of intentional discrimination based on skin color and/or national heritage. Even the statement "you people" is too ambiguous to constitute evidence of discrimination where, as here, Shears just as easily could have been referring to all nurses or all MCH float nurses. Accordingly, summary judgment on Paradisis' claim of discrimination was proper.

-16-

2017 U.S. App. LEXIS 3366, *14-15 (citations omitted).

The alleged incidents and comments Plaintiff offers in the present case fall far below what was offered by the plaintiffs in *Parker* and in *Paradisis*, and *that* evidence, according to the Third Circuit in both cases, fell below the threshold for the fourth prima facie requirement. Consequently, Plaintiff in this case, like the plaintiffs in *Parker* and *Paradisis*, cannot get past summary judgment, and in fact cannot even get past the prima facie case.

### (b)   *Legitimate Nondiscriminatory Reason.*

If Plaintiff were to get past the prima facie case, then Defendant would be expected to offer, again, its legitimate nondiscriminatory reason for Plaintiff's discharge.   *Paradisis v. Englewood Hosp. Med. Ctr.*, 2017 U.S. App. LEXIS 3366, *9-10 (3d Cir. Feb. 27, 2017) ("If the plaintiff makes out a prima facie claim of discrimination and/or retaliation, the burden shifts to the defendant, who must 'articulate one or more legitimate, non-discriminatory reasons for its employment decision.'") (quoting *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995).

As discussed above, in connection with Plaintiff's age discrimination claim, Defendant has proffered several legitimate nondiscriminatory reasons for Plaintiff's discharge, any one of which would have been sufficient for Plaintiff.   *See supra p. 5*.   *Fritz Affidavit ¶ 53 [App 13]*.

### (c)   *Proof of Pretext.*

Even if Plaintiff got past the prima facie requirement, his national origin claim still would fail because he cannot show pretext.   The Third Circuit recently explained pretext for a national origin discrimination, again, in *Paradisis v. Englewood*:

> If the defendant is able to articulate such a reason, the burden shifts back to the plaintiff, who must demonstrate that the employer's proffered reasons were merely a pretext for intentional discrimination. *McDonnell Douglas*, 411 U.S. at 804. Specifically, to survive a motion for summary judgment in a Title VII case, a

> plaintiff must point to evidence which: (1) "casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonable conclude that each reason was a fabrication;" or (2) allows the factfinder to reasonably conclude that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994). A plaintiff can demonstrate the latter by "showing that the employer in the past had subjected [her] to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of [her] protected class more favorably, or that the employer has discriminated against other members of [her] protected class or other protected categories of persons." *Id.* at 765.

*Paradisis*, 2017 U.S. App. LEXIS 3366, *9-11.

### (i) First Prong for Proving Pretext

Plaintiff must produce evidence that tends to show UPP's stated reasons were a "fabrication."   Plaintiff faces the same hurdle here as with the age discrimination claim discussed above.  *See supra pp. 6-9.*  Plaintiff admits he has no basis to believe that Brian Fritz or John Kunicky had any bias against Plaintiff based on Plaintiff's age or national origin.   As already stated, the point of this prong of the pretext analysis is *not* to determine whether the employer was *correct*, or made a good or prudent judgment, but solely whether Plaintiff can provide competent evidence that the legitimate preferred reason was fabricated.   The evidence in the present case is overwhelming and insurmountable, beginning with the fact that both Fritz and Kunicky were high level officials within UPMC with no prior conflict or dispute with Plaintiff, and no reason to do anything *other* than find a prudent resolution to what clearly was a dysfunctional one, to say the least.

### (ii)  Second Prong for Proving Pretext

Plaintiff has asserted the four incidents already discussed, which he construes to have national origin meaning, but he acknowledges they did not make explicit reference to his national

origin.  *Mathews Depo. Tr. P57/L16-L19, P58/L15-L17 [App 171]*.  That is not enough to find pretext under this second prong.

However, even if those incidents are given national origin meaning, they still do not support pretext in this case because it is undisputed they were made by, or involved, Janet Storer. It is undisputed Storer was not the decision maker on Plaintiff's discharge, and in any event, *Fritz Affidavit ¶¶ 21, 22, 40, 41, 42, 48, 49, 50, 52 [App 6, 10, 11, 12, 13]; Kunicky Affidavit ¶¶ 2, 18 [App 79. 82],* it is undisputed they do not relate even remotely to the discharge decision. Moreover, Plaintiff cannot pin down the date for the Snazzy Dresser comment any closer than sometime in the six or seven months before his discharge.  *Mathews Depo. Tr. P61/L1-L13 [App 172]*.  Hence, it is reasonable to infer that it was not close in time to Plaintiff's discharge, and for that reason also do not raise the suspicion required to meet the fourth prima facie element.

It is well settled that comments and conduct by non-decision makers, unrelated to the decision-making process, are stray comments that are not probative of discrimination.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3rd Cir. 1992).   Moreover, the temporal remoteness of these alleged remarks, both from each other and from the July 2014 discharge decision, seriously undermines their value.  *See Parker v. Verizon Pa., Inc.,* 309 F. App'x 551, 559 (3d Cir. 2009) ("The record as a whole does not support that two stray comments made months before [plaintiff's] discharge… support that [the employer's] decision to discharge [plaintiff] was actually motivated by discriminatory intent and not the reason proffered."); *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997) (Courts consider several factors on alleged discriminatory comments in this context, including the relationship of speaker to employee, temporal proximity of the statement to the adverse employment decision, and the purpose and content of the statement).

Plaintiff's reasoning on his national original claim is about the same as his age claim:

> Q   So that's how you concluded or came to believe that it was race
> or national origin discrimination was you couldn't think of any other
> reason why she would be hostile toward you?
>
> A   Right.   And the statements that she had made regarding
> Naveed, regarding America's great pastime

*Mathews Depo. Tr. P145/L5-L15 [App 193]*.

## D.   Retaliation and Harassment (Age and National Origin) (Counts II, IV, VII)

### *(1) Prima Facie Case*

The *Paradisis v. Englewood* case again provides the proof framework, this time for national origin retaliation under Title VII:

> To prevail on a claim of Title VII retaliation, a plaintiff is required
> to show that: (1) she engaged in activity protected by Title VII; (2)
> she suffered an adverse employment action; and (3) there was a
> causal connection between her participation in the protected activity
> and the adverse employment action. *Moore v. City of Philadelphia*,
> 461 F.3d 331, 340-41 (3d Cir. 2006).

*Paradisis*, 2017 U.S. App. LEXIS 3366, * 16.   Plaintiff's Complaint in the present case does not articulate clearly what protected activity he is basing the retaliation claim on, but Defendant will assume for summary judgment purposes that Plaintiff engaged in protected activity and otherwise met the requirements of a prima facie case of retaliation.[7]

### *(2)   Legitimate Nondiscriminatory Reason.*

Again in the *Paradisis* case, the Third Circuit instructs that following the prima facie case,

---

[7]  It is not clear Plaintiff engaged in protected activity earlier than July 11, 2014, when he claims he told Meghann Ledford he would file an EEOC charge. Complaint ¶ 72. If so, Defendant's actions or decisions prior to that date can form the basis for alleged retaliation. *Paradisis*, 2017 U.S. App. LEXIS 3366, *16-18 ("to establish the required causal connection between an employee's participation in a protected activity and an adverse employment action, a plaintiff must show that the employer took an adverse employment action after or contemporaneous with the employee's protected activity'") (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)).

Defendant must articulate a legitimate nondiscriminatory reason for the alleged national origin retaliation:

> If the plaintiff makes out a prima facie claim of … retaliation, the burden shifts to the defendant, who must "articulate one or more legitimate, non-discriminatory reasons for its employment decision."

2017 U.S. App. LEXIS 3366, *9-11 (quoting *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995)).   The legitimate nondiscriminatory reason articulated for age and national origin discrimination above, serves the same function here for retaliation.   *See supra pp. 5, 17-18.*

### (3)   *Proof of Pretext.*

Finally, the *Paradisi* case again offers guidance on Plaintiff's burden to prove pretext for a national origin and age retaliation case, which is identical to the protocol for national origin discrimination, including the two prongs for proving pretext.   2017 U.S. App. LEXIS 3366, *9-11 (3d Cir. Feb. 27, 2017).   Hence, this analysis will be identical to the pretext discussion provided above.   *See supra pp. 6-11, 17-20.*

As with the pretext prongs for Plaintiff's age and national origin discrimination claims, Plaintiff cannot show pretext because it is undisputed that Brian Fritz and John Kunicky conducted independent investigations and assessments, and concluded and believed Plaintiff had to be discharged because of his job performance, his behavior toward his manager, and his failure to respond properly to the PIP or complete it successfully.   The Third Circuit recently reaffirmed its position that the "honest belief" rule applies in this circuit to both ADEA and Title VII retaliation claims.   *Capps v. Mondelez Global, LLC*, 847 F.3d 144, n.9 (3d Cir. 2017).

### (4)   *Hostile Environment*

Plaintiff's Complaint makes passing reference to an alleged hostile environment, but does not provide specific allegations regarding the reference.   Nonetheless, even taking all of the

Plaintiff's allegations about his work environment, experiences, and relationships, it is clear he has not alleged anything that can rise to the level required to constitute, or from which a reasonable jury could infer, a hostile environment from the standpoint of age or national origin.

The four incidents already discussed are all Plaintiff can put forward, and as a matter of law, they do not come close to supporting a claim of hostile work environment.   Though there undeniably was acrimony between Plaintiff and Janet Storer, it is undisputed it all revolved around Plaintiff's job duties and job performance.   However, to be actionable, it is not the *hostility* that must be pervasive, it is hostility *about* Plaintiff's age or national origin that must be pervasive.   In the present case, as already discussed, *see supra, pp. 13-15*, the evidence of age or national origin being the *topic* or *subject* of *anything* is non-existent, or at best, it must be interpolated or extrapolated from vague references.

In *Kwaning v. Cmty. Educ. Ctrs., Inc.*, 2015 U.S. Dist. LEXIS 152124, *23 (E.D. Pa. Nov. 10, 2015) (Kearney, J.), this court granted summary judgment for the employer in a race and national origin PHRA case that also alleged hostile work environment.   The court discussed what type of workplace behavior and comments can—and cannot—take a national origin hostile environment claim past summary judgment:

> In deciding whether the alleged conduct constitutes a hostile work environment, we must be careful to view the totality of the circumstances rather than viewing incidents individually. Factors for us to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." "[O]ffhanded comments and isolated incidents (unless extremely serious) are not sufficient to sustain a hostile work environment claim. Rather, the conduct must be extreme to amount to a change in the terms and conditions of employment."   "Even conduct that is unquestionably offensive or rude will not rise to the level required

to make out a hostile work environment claim unless it sufficiently
severe."

*Kwaning*, 2015 U.S. Dist. LEXIS 152124, *17-18 (footnotes omitted) (quoting *Weston v.*

*Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001) and *Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535,

545 (W.D. Pa. 2009)).   The *Kwaning* court then reviewed several specific incidents which, though

rude and inappropriate, and likely called for discipline, did not give rise to a hostile environment:

> Dissatisfaction with a prison workplace, including unfair workplace
> policies, exceptionally rude manners and perceived assignment
> preferences may be appropriate for a union grievance and internal
> redress. Proof and jury review of discrimination and hostile work
> environment requires more.   …
>
> Officer Kwaning may feel justified in submitting a grievance for
> each instance of alleged misconduct, but petty slights cannot form
> the basis of a hostile work environment claim.   …
>
> The extraordinarily rude reference to Officer Kwaning's under-
> standing of the English language should be properly disciplined in
> the Prison. … But, the reference does not constitute severe or
> pervasive conduct essential for a hostile work environment claim.
> The references to American icons such as Dr. Martin Luther King,
> Malcolm X and Rosa Parks also do not constitute severe or
> pervasive conduct in this case. We cannot find an off-hand reference
> to such influential Americans, *even if intended to be pejorative* born
> of ignorance, constitutes an insult let alone severe or pervasive
> discrimination.

2015 U.S. Dist. LEXIS 152124, *1, *23, *25 (emphasis added).   *See also, LaRochelle v. Wilmac*

*Corp.*, 2016 U.S. Dist. LEXIS 133135, *72-75 (E.D. Pa. Sep. 27, 2016) (Stengel, J.) (summary

judgment granted on national origin hostile environment claim because rude and even racist

comments not enough to allow finding of hostile environment).

**III.   CONCLUSION**

Based on the foregoing arguments and authorities, Defendant respectfully urges the Court to enter summary judgment in its favor and against Plaintiff.

Respectfully submitted this 10th day of March, 2017.

/s/ *William S. Myers*

John J. Myers (Pa. ID 23596)
William S. Myers (Pa. ID 38565)

Eckert, Seamans, Cherin & Mellott, LLC
600 Grant Street, 44th Floor
Pittsburgh, Pennsylvania 15219
412-566-6000 (telephone)
412-566-6099 (facsimile)

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

KUZHIKALAYIH MATHEWS
aka Samuel "Sam" Mathews,

                    Plaintiff,

v.                                                              Case No. 2:16-CV-1148-MAK

UNIVERSITY OF PITTSBURGH PHYSICIANS
aka UPP, INC,

                    Defendant.

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing **Defendant's Brief in Support of Motion for Summary Judgment** will be served on the following counsel for Plaintiff on **March 10, 2017,** by operation of the Court's electronic filing system.

> Rolf Louis Patberg, Esquire
> Patberg, Carmody & Ging
> Deutschtown Center
> 801 Vinial Street, Third Floor
> Pittsburgh, Pennsylvania   15212

/s/ *William S. Myers*
William S. Myers