IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KUZHIKALAYIH    MATHEWS    a/k/a | ) | CIVIL DIVISION |
| SAMUEL "SAM" MATHEWS, | ) | |
| | ) | NO.: 16-cv-1148-AJS |
| Plaintiff, | ) | |
| | ) | JUDGE MARK KEARNEY |
| v. | ) | |
| | ) | |
| UNIVERSITY    OF    PITTSBURGH | ) | |
| PHYSICIANS a/k/a UPP, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COUNTERSTATEMENT OF UNDISPUTED FACTS**

AND NOW, comes the Plaintiff, by and through his attorneys, Rolf Louis Patberg, Esquire,

and the law firm of Patberg, Carmody & Ging, and files the following Counterstatement of

Undisputed Facts and, in support thereof avers as follows:

**A. PLAINTIFF'S EXHIBITS**

1.      On December 18, 2010, Kuzhikalayih "Sam" Mathews underwent a manager

evaluation by Paula Hutson for the work period December 20, 2009 through December 18, 2010.

Sam Mathews was rated in twenty-one (21) categories and either received a "solid," "strong,"

"good performer," a "superior performer," or a "top performer."   Sam Mathews received eleven

(11) "solid, strong, good performer" ratings; nine (9) "superior performer" ratings; and one (1)

rating of "top performer (role model)".  Sam Mathews's overall 2010 rating summary was graded

as a "superior performer."   The following evaluation was provided by Paula Hutson:

> "Sam continues to be a very important member of UPP Peds Finance.  His
> role in the expense management process is very essential to the department.
> He has maintained great working relationships with faculty/staff & his
> communication and customer service competencies are key elements to this
> process." P.Apx. 941,954.

1

2.      On December 17, 2011, Sam Mathews received a Manager Evaluation from Paula Hutson for the time period of December 19, 2010 through December 17, 2011.  Sam Mathews received seven (7) "solid, strong, good performer" ratings.  Sam Mathews received ten (10) "superior performer" ratings. Sam Mathews received two (2) "top performer (role model)" ratings. Sam Mathews's overall rating was that of "superior performer."  Paula Hutson rated Sam Mathews as follows:

> "Sam continues to be a key team member of Peds Finance.  He handles the expense management function very well in all aspects (from training staff to ensuring policy guidance to handling our internal audits).  In addition, Sam has handled the implementation to BAR very well for our UPP external agreements.  The CLT invoicing will be quite a challenge to undertake this year & am planning to promote Sam to the next level if this goal is achieved. Sam has done an exceptional job in all responsibilities over the last several years and a promotion is well deserved for his accomplishments." P.Apx. 962.

3.      On December 15, 2012, Sam Mathews underwent a manager evaluation by Paula Hutson for the period of December 18, 2011 through December 15, 2012.  Sam Mathews received eighteen (18) "solid, strong, good performer" ratings.  Sam Mathews received four (4) "superior performer" ratings.  His overall rating was "solid, strong, good performer."  His direct supervisor, Paula Hutson, commented as follows:

> "Sam is a great asset to Peds Finance.  His many years of experience in Supply Management is very valuable & is clearly evident by the tremendous job Sam does every day in educating staff and faculty, compliance to policy, etc.  Sam has also done very well with our UP as well as CLT invoicing & was a very clean transition for us - job well done!" P.Apx. 962.

4.      By year-end 2013, Sam Mathews was promoted to Financial Analyst Intermediate. (CL5). P.Apx. 933; Mathews Aff., ¶2.

2

5.      On June 30, 2013, Sam Mathews started his new position with the University of Pittsburgh Physicians.  (UPMC 2365), <u>Mathews Aff.</u>, ¶2, <u>P.Apx. 933</u>.

6.      On December 14, 2013, Sam Mathews received a manager evaluation from Paula Hutson for the period of December 16, 2012 through December 14, 2013.  Sam received twenty (20) "solid, strong, good performer" ratings and one (1) "superior performer" rating.  His overall performance was a "solid, strong, good performer" rating.  His supervisor, Paula Hutson, commented as follows with regard to Sam Mathews's overall performance:  "Sam has been a good employee in the department.  He is always happy to help and willing to dig in.  Sam has a good repoire with all members of the team." <u>P.Apx. 978</u>.

7.      On January 8, 2014, Sam Mathews to Paula Hutson cc'd to Janet Storer regarding the reference requirements for MyWallet submissions.  Notes that he would be sure to submit receipts moving forward.  He also advised all parties concerning the use of his "MyCart" and he must have receipts.  (UPMC 2347-2349).

8.      On January 9, 2014 at 7:13 a.m., e-mail from Janet Storer to Brian Fritz noting that Sam did submit the expense to Paula, who approved it not knowing that the documentation was an issue.  E-mail had been sent out on January 8th that Sam's debit card for recruitment expenses that a receipt was required.  Paula Hutson was to be sending out an e-mail that day indicating that corporate had taken over the function and all calls would be directed to Pam Walsh.  Andrea Badway, Paula Hutson and "Nancy H." were to discuss existing CLT's but Sam was to start the process on new CLT's.  Janet Storer believed that there were 16 of those.  Noted that she would be spending time with Sam to show him how to create P&L's for ortho CHP.  (UPMC 2350).

9.      No formal or informal disciplinary action was taken against Paula Hutson or Sam as a result of the payment without a receipt. <u>P.Apx. 875</u>.

10.     On January 9, 2014 at 8:20 p.m., an e-mail from Brian Fritz to Janet Storer regarding monthly travel card statement noting, "Thank you for the update."  Notes that he has concerns about Paula not knowing that it was an issue and approving it.  Notes that she was not aware of the policy.   They are to use the new mileage long and complimented Storer on communications and assigning Sam to CLT process.  (UPMC 2350).

11.     On January 9, 2014, an e-mail was sent from Brian Fritz to Janet Storer after Storer made an inquiry as to whether or not Sam Mathews should be written up noting "Andrea is okay with my doing so."  Fritz suggested that Paula Hutson would also need to be written up and recommended talking to both and documenting the details and conversations that were had.  Fritz indicated that he was not sure it needs to be officially submitted through HR via internal documentation.  Fritz notes that he usually sends this information to himself unofficially or she could work with HR Meghann Ledford.  (UPMC 2355).  P.Apx. 875.

12.     On January 13, 2014, an e-mail from Paula Hutson to Janet Storer asking if she is keeping track of Sam's time.  (UPMC 2474).

13.     On January 15, 2014 at 8:36 a.m., an e-mail was sent from Janet Storer to Paula Hutson regarding "yesterday's meeting."  It discusses the departure of Kathy Ostereiter and notes the clinical trial expense project that Andrea had requested be split between Paula Hutson and Sam Mathews.  The department P&L's for ortho and peds will be split between Janet Storer, Jeff Martin and Sam Mathews.  Sam Mathews will be responsible for ortho's CHP and possibly Rogal & Fowler.  Storer noted that she would train Sam on the ortho CHP and Rogal & Fowler.  The e-mail notes that she had talked to Brian and hooked Sam Mathews up with a reporting buddy, Kyle Zamperini.  Noted that Kathy would sit with Ms. Hutson and Sam Mathews to show them both the

4

process.  Sam Mathews was to give Pam direction who to contact on the issue.  (UPMC2342-2343).  P.Apx. 876.

14.     On January 19, 2014 at 12:08 a.m., e-mail from Sam Mathews at his private account at sam.mathews@comcast.net to Sam Mathews at work titled "How to file a grievance in a workplace." (UPMC2476-2479).  P.Apx. 878.

15.     On January 23, 2014 at 8:34 p.m., an e-mail from Brian Fritz to Janet Storer making inquiry whether it would be better for Sam to come to Oakland based upon "what we had previously discussed." (UPMC2354).  P.Apx. 882.

16.     On May 9, 2014, a Friday, a meeting occurred between Janet Storer and Sam Mathews in a conference room.  P.Apx. 392,990.

17.     The following Monday, Janet Storer described the meeting as follows in an e-mail dated May 12, 2014 to Brian Fritz:

> "1) When Sam was reassigned to Bar Invoicing, evouchers and epro he was angry.  He felt he had not been given a chance to learn the P&L's and the reporting.  He asked to speak to me in the conference room.  He informed me that he had excellent reviews.  He mentioned his age, that he was sick and that his wife was sick.  He screamed at me that he was going to human resources to file a grievance.  I told Sam he could do that and told him to take the time to go to HR.  Sam thought he should file the grievance with CHP HR.  I told him that he worked for UPP and should go to Forbes Tower to file his grievance.  Sam did not file a grievance.  Sam later apologized for his behavior." D.Apx. 019.

18.     On or about May 12, 2014 at 8:28 a.m., thirty-one days prior to Sam's Performance Improvement Plan, Sam Mathews sent Meghann Ledford, UPMC UPP's HR Representative, an e-mail regarding "a situation at work." (CL64).  P.Apx. 392.

19.     On May 12, 2014 at 8:57 a.m., an e-mail from Janet Storer to Brian Fritz and Paula Hutson indicating that they spoke with Brian this morning regarding the incident with Sam on

Friday.  Janet asked that Paula send a history regarding Sam to Brian and her.  (UPMC2470-2471).

D.Apx. 24.

20.    The incident referenced by Storer was a meeting with Sam wherein Sam, by Storer's own admission, raised the issue of age bias.  P.Apx. 21.

21.    On May 12, 2014 at 8:57 a.m., Janet Storer sent an attachment to Brian Fritz.  Janet Storer stated, "Sam told me that I am persecuting him and that he would like to speak to me outside of work.  I found this to be somewhat threatening.  I told Sam I would not speak to him outside of work and that the next time we spoke it would be with Andrea Badway and Brian Fritz in the room."  D.Apx. 21.

22.    On May 12, 2014 at 10:01 a.m., an e-mail was sent from Paula Hutson to Janet Storer and Brian Fritz noting that Sam did not put in the required hours per day.  (UPMC2470-2471).

23.    On May 12, 2014, Janet Storer and Sam Mathews had an exchange of e-mails regarding the application of medical staff dues as to the CME allowance or orthopedics and peds.  Janet Storer seemingly chastised Sam Mathews regarding whether or not they should be deducted from CME.  (CL80).

24.    On May 12, 2014 at 10:12 p.m., Fritz sent an e-mail to Michael Anderson (HR) and John E. Kunicky, titled "Need your guidance," which stated:

> "We are having issues with a employee in the Ortho/Peds pod.  The current (past 6 months specifically) is complicated as the previous manager (also his current manager Paula Hutson) failed to manage him and do an appropriate evaluation.  Janet who is the Manager of the department is now dealing with issues.  We all agree he is a cancer to the department and need to terminate we need your guidance on how to do so appropriately.  Looking forward to your thoughts.  Brian."  D. Apx. 027.

25.     On May 13, 2014 at 11:25 a.m., Fritz sent an e-mail to Storer and Hutson indicating that he is concerned regarding Paula's comments of the May 12, 2014 at 10:01 a.m. e-mail. Brian noted that, as Sam was a direct report to Hutson, a lot of the issues which Storer was dealing with should have been addressed by Hutson. Fritz said he was rather confused by the comment that most of Sam's responsibilities are covered by corporate. Brian noted that the work Sam was doing had been consolidated in his current team. He backfilled and noted that that is a value added to the department. Also notes that they are far beyond reorganization as an excuse. They were focusing on value and added activities and that he expects her to be part of delivering the message and formally managing him to achieving the plan. (UPMC2470-2471). D. Apx. 024.

26.     On May 13, 2014 at 3:15 p.m., an e-mail was sent from Paula Hutson to Brian Fritz and Janet Storer responding to Brian's e-mail of May 13. Paula assured Brian that they will work with Janet to make sure that the Performance Improvement Plan is completed. Hutson noted that she had not intended to use the reorganization as an excuse for the issues ongoing with Sam. (UPMC2470-2471). P.Apx. 671. D. Apx. 024.

27.     On May 21, 2014, Sam Mathews spoke with Meghann Ledford in HR by telephone at 8:00 a.m. At a 9:00 a.m. staff meeting he told Janet that he had done this and to expect a phone call from Meghann. He reminded her that she had goaded him into contacted HR and she acknowledged the same. (CL79).

28.     On May 22, 2014 at 9:29 a.m., Storer sent an e-mail to Ledford cc'd to Brian Fritz making inquiry regarding the drafted PIP plan. Once again, Storer stated that she can no longer meet with him on his own. It discusses the issue with Carnegie Mellon and the existing contract. Storer says that Sam indicated that Andrea and she had been informed of the 9-month billing cycle

for September and she believes that this is not true and is false. Storer said she was "frustrated by the process." (UPMC2370-2371). D.Apx. 029-030, P.Apx. 888-889.

29.     On May 22, 2014, an e-mail was sent from Janet Storer to Paula Hutson instructing Paula not to mention her in discussions with Sam the next day. (UPMC2472). P.Apx. 887.

30.     On May 22, 2014, Janet Storer requested Sam Mathews attend a meeting and berated him for invoicing Carnegie Mellon which was an apparent overbilling. The account had not been billed since October of 2013. (CL79).

31.     On May 23, 2014 at 2:39 p.m., Sam Mathews e-mailed Meghann Ledford inquiring as to whether or not she had spoken to Janet. He indicated that he had felt "direct repercussions" and that she had challenged him to bring it to the attention of Human Resources. He requested a direct meeting with Meghann Ledford. P.Apx. 986.

32.     On May 23, 2014 at 2:30 p.m., Meghann Ledford e-mailed Sam Mathews asking to speak with him again. P.Apx. 389.

33.     On May 29, 2014 at 4:27 p.m., Sam Mathews sent an e-mail to Meghann Ledford indicating that he had spoken and received advice and he could not respond or give statements regarding the work issues. He indicated he would carry out his assigned duties diligently and to the best of his abilities. P.Apx. 985.

34.     On May 29, 2014 at 4:29 p.m., Meghann Ledford e-mailed Sam Mathews indicated that they needed to set up a time to talk. P.Apx. 985.

35.     On June 2, 2014, Meghann Ledford e-mailed Sam Mathews to indicate that she wished to set up a meeting with him that week. (CL59). P.Apx. 387.

36.     On June 3, 2014 at 10:00 a.m., Meghann Ledford sent an e-mail to Sam Mathews to make inquiry regarding a comment he had made a few prior weeks before indicating that he

8

would like to meet her after work sometime after she discussed performance issues.  (CL58).  P.Apx. 386.

37.     On June 3, 2014 at 10:11 a.m., Sam Mathews e-mailed Meghann Ledford explaining a comment that he had made to Janet which was intended to ask if they could speak in private as opposed to other individuals who are milling around the office.  (CL58).  P.Apx. 386.

38.     On June 6, 2014, Fritz inquired to Storer whether or not Sam's PIP had been finalized and noted that they needed to "get him on this ASAP if not."  D.Apx. 029, P.Apx. 888.

39.     Up to an including the day before Sam's firing, no investigation had yet been undertaken by Fritz or any member of upper level management regarding Mathews's complaints previously made to Ledford.

40.     Sam Matthews's Performance Improvement Plan of June 12, 2014 provided that Paula Hutson and Janet Storer would meet with Sam weekly to discuss his progress.  D.Apx. 034.

41.     On June 11, 2014, an e-mail from Janet Storer to Brian Fritz informing him that Sam's PIP is the following morning and noted that she and Paula would be presenting together with Meghann Ledford.  (UPMC2370).  P.Apx. 888.

42.     On June 12, 2014 at 10:43 a.m., Janet Storer e-mailed Sam Mathews to confirm the meetings for June 17th and June 20th.  She also noted that Thursday was the Pirate game.  (CL54).  P.Apx. 992.  Storer ridiculed Sam Mathews that she was not surprised that Sam was not attending "America's favorite past time."  Mathews Aff., ¶71.

43.     On June 12, 2014, Janet Storer made inquiry to Sam Mathews as to whether or not he was going to the Pirate game with UPMC.  He noted that he had a prior commitment.  She commented that she was not surprised that he was not interested in "the great American past time."  (CL54).  P.Apx. 992.

44.     On June 12, 2014, Janet Storer, Paula Hutson, Brian Fritz and Meghann Ledford signed a Performance Improvement Plan document and presented the PIP to Sam.   The Performance Improvement Plan document identified the following areas resulting in the Performance Improvement Plan:

      a.      Failure to complete special projects regarding P&L;

      b.      Placing a request for payment without the required receipt;

      c.      Failure to reconcile the recruitment expenses and requested support in January of 2013;

      d.      Retaining the Chairman's phone bill in error;

      e.      Overbilling Carnegie Mellon for its sports contract for the department;

      f.      Submitting expenses into an e-voucher for McKeesport medical staff dues that would have been billed to Mercy had the mistake not been caught;

      g.      Failing to recognize that the physicians had met their CME limits for medical staff dues causing overpayment of the CME allotment.  (CL102-105).  D.Apx. 032-035.

45.     On June 12, 2014, Sam Mathews as placed on a Performance Improvement Plan for 45 days which stated:

> "It is imperative that the employee's performance improves, as outlined above, within the prescribed timeframe.  The employee's performance will be formally reviewed on the proposed date of the plan conclusion.  If the performance improvement is not satisfactory, further action will be taken, up to and including termination of employment."   D. Apx. 034. (UPMC2365).

46.     On June 15, 2014 at 5:32 p.m., Sam Mathews contacted Brian Fritz requesting a meeting.  P.Apx. 995.

47.     On June 15, 2014 at 8:45 p.m., Storer sent Ledford an e-mail stating she was "wary" to meet with Sam without others present.  D.Apx. 037.  The e-mail also described Sam as a "used car salesman" and that by meeting with her Sam "has more than motive."  D.Apx. 037.

48.     On June 15, 2014, Sam sent an e-mail to Fritz indicating that there was a "significant amount of confusion" regarding Storer's reports to him and sought "some direction and counsel" from Fritz.  D.Apx. 037.

49.     On June 16, 2014 at 11:45 a.m., Brian Fritz responded to Mathews's request for a meeting.  Fritz contended that there were performance issues and an associated plan to move forward that he had previously discussed his performance issues with Janet.  Fritz also contended that there was supporting documentation in place, but did not want to meet if Sam Mathews was to challenge the Performance Improvement Plan.  (CL1-2).  P.Apx. 994.

50.     On June 16, 2014 at 12:24 p.m., Sam Mathews responded to Brian Fritz voicing that he was relieved that there had been a plan of some sort for his training and development, as there had previously been no plan the prior eleven (11) months.  Mathews also stated that Janet Storer's conclusions and her performance to date were based on incomplete information.  (CL1).  P.Apx. 994.  D.Apx. 039.

51.     On June 17, 2014 at 7:14 a.m., an e-mail from Janet Storer to Meghann Ledford regarding Jean Sekelik inquiring whether or not Meghann had spoken to Jean Sekelik regarding Sam wanting to talk to her outside of work.  (UPMC2445-2446).  P.Apx. 890, 928.

52.     On June 17, 2014 at 3:00 p.m., a meeting was scheduled between Sam Mathews and Janet Storer.  (CL55).  P.Apx. 402.

53.     On June 17, 2014, a meeting occurred between Janet Storer and Sam Mathews.  (UPMC2457).  P.Apx. 402.

11

54.     On June 18, 2014 at 12:31 p.m., Janet Storer forwarded an e-mail to Sam Mathews, cc'd to Brian Fritz, Paula Hutson, and Meghann Ledford.  The purpose of the e-mail was to cover points that had been discussed at the PIP meeting.  She noted that training would begin on the profit & loss as to orthopedics at their next meeting and review various points that had been discussed during the meeting.  Janet Storer also referenced "some time off due to personal issues." (CL40).  P.Apx. 892.

55.     On June 18, 2014 at 1:00 p.m., an e-mail was sent from Janet Storer to Sam Mathews cc'd to Brian Fritz, Paula Hutson and Meghann Ledford regarding the "points to be covered in our meeting."  These included the following:  (1) historical discussion between break even agreements; (2) peoplesoft training and discussion; (3) manual manipulation of numbers; (4) future discussions on changes-verified corporate policy should always be covered.

- Reconciling recruitment expense

- Discussing the points of communication regarding items in the past that may be unfamiliar

- Bar invoicing

- E-Voucher approval.  (UPMC2356-2358).  P.Apx. 895.

56.     On June 18, 2014 at 2:18 p.m., an e-mail was sent from Janet Storer directed to Brian Fritz noting that they also discussed why Sam thought he did not need receipts for one item on the PIP.  Sam purportedly admitted that he had the e-mail misinterpreted.  Storer said that she told Sam that he needed to use provider ID/Department ID lists in order to accurately enter expenses.  She told Sam he would give him FY15 changes on June 18 and let him know where the file is located.  Apparently, Sam contacted Andrea Badway's secretary, who then contacted others, who then eventually contacted Janet Storer.  (UPMC2368).  P.Apx. 895.

57.     On June 18, 2014, an e-mail was sent from Brian Fritz to Janet Storer in response to her prior e-mail of June 18, 2014 at 2:18 p.m.  Fritz notes that they could "chat" tomorrow to get on the same page.  The goal for the meeting is to allow him to talk, but then respond with support.  (UPMC2368).  P.Apx. 895.

58.     On June 18, 2014, an e-mail was sent from Brian Fritz to Janet Storer requesting a copy of Sam's PIP again.  (UPMC2358-2359).

59.     On June 18, 2014, an e-mail from Janet Storer to Brian Fritz, Paula Hutson and Meghann Ledford noting the training should begin on the P&L's for orthopedics the next time that they meet.  Provides a bullet point summary of items to be discussed.  (UPMC2457-2459).

60.     On June 18, 2014 through July 9, 2014, PIP information exchanged between Janet Storer and Meghann Ledford and others.  (UPMC2384-2388).  P.Apx. 910-914.

61.     On June 20, 2014 at 9:00 a.m., a meeting was scheduled between Sam Mathews and Janet Storer.  (CL55).

62.     On June 23, 2014 at 11:33 a.m., Sam Mathews e-mailed Janet asking her to advise as to her schedule for the week so that he could mark his calendar.

63.     On June 24, 2014 at 11:08 a.m., Paula Hutson circulated an e-mail to Janet Storer memorializing the meeting of said date with Sam to go over the components of the breakeven P&L Agreements and the format utilized.  (CL43).  P.Apx. 900.

64.     On June 24, 2014 at 1:57 p.m., and e-mail was sent from Paula Hutson to Janet Storer dated June 24 was forwarded to Sam Mathews.  (CL43).  P.Apx. 900.

65.     On or about June 24, 2014, Sam Mathews again met with Janet Storer.  In addition, Sam Mathews presented his response to the PIP with exhibits.  P.Apx. 997-999, Mathews Aff., ¶73-74.

66.     On June 27, 2014, meeting between Paula Hutson and Sam Mathews lasted for 45 minutes on the project at the AOB.  (UPMC2457).

67.     On July 2, 2014, Janet Storer e-mailed Sam Mathews and cc'd Paula Hutson, noting that they did not have an opportunity to meet and that she would be back the following Monday and a meeting would be set up accordingly.  (CL44)  P.Apx. 1001.

68.     On July 3, 2014, an e-mail was sent from Sam Mathews to Janet Storer cc'd to Brian Fritz, Paula Hutson and Meghann Ledford regarding update to discussion points for PIP meeting. Janet Storer was unable to join due to an appointment.  Notes that he had been relocated to the AOB rendering it impracticable to continue complete routine monthly and daily tasks. (UPMC2457-2459).  P.Apx. 1003.

69.     On July 3, 2014 at 4:30 p.m., Sam Mathews circulated an e-mail to update the discussion points from the PIP meeting to Janet Storer, Brian Fritz, Paula Hutson, and Meghann Ledford.  (CL39).  P.Apx. 1003.

70.     On July 7, 2014 at 12:54 a.m., Janet Storer e-mailed Sam Mathews, cc'ing Brian Fritz, Paula Hutson and Meghann Ledford providing three (3) potential dates and times for a meeting.  (CL45-46).  P.Apx. 1005.

71.     On July 7, 2014 at 9:23 a.m., an e-mail was sent from Sam Mathews to Janet Storer regarding Rogal & Fowler P&L.  (UPMC2430-2439).  P.Apx. 901.

72.     On July 7, 2014 at 9:32 p.m., an e-mail was sent from Janet Storer to Sam Mathews regarding Rogal & Fowler P&L.  (UPMC2426-2429).  P.Apx. 901.

73.     On July 7, 2014 at 3:01 p.m., an e-mail was sent from Meghann Ledford to Janet Storer regarding update for discussion points for a PIP meeting on June 17, 2014 forward. (UPMC2457-2459).  P.Apx. 905.

74.     On July 8, 2014 at 1:11 p.m., an e-mail from Sam Mathews to Janet Storer cc'd to Brian Fritz, Paula Hutson and Meghann Ledford regarding the PIP meetings.  He sets forth and provides all of the work that he does and confirms PIP meetings of July 8, 9 and 10 at Children's Hospital of Pittsburgh.  (UPMC2411-2412).  P.Apx. 908.

75.     On July 9, 2014 at 3:41 p.m., Sam Mathews e-mailed Meghann Ledford regarding the PIP, enclosing the Rogal & Fowler P&L and voicing his willingness to complete the process to the best of his availability to prove to Janet that he can be a valuable member of the team. (CL47).  P.Apx. 422, 915.

76.     On July 9, 2014 at 4:45 p.m., an e-mail was sent from Paula Hutson to Brian Fritz documenting a meeting of July 9, 2014.  Paula describes the meeting as being very uncomfortable, as well as unproductive.  There was no discussion about job performance.  Paula indicates that Sam does not agree with the PIP.  Paula noted that as Meghann and she ended the meeting, Sam stated that he would try to work better on communication with Janet and apologized. (UPMC2367).  D.Apx. 049.

77.     On July 9, 2014 at 8:53 p.m., Storer sent an e-mail to Fritz regarding "PIP Sam Mathews."  Sam told Storer that he "had not been given all the information that he needed to complete the P&L."  D.Apx. 046.  She said Sam's anger had become "frightening" to her.  She referenced Sam to be a "stalker."  Storer also said that she was "fearful that Sam may harm [her] in some way."  D.Apx. 046.  Storer also stated:

> "I feel like I am being bullied and that I am now a victim."  D.Apx. 046.

78.     On July 10, 2014 at 9:18 a.m., Brian Fritz sent an e-mail to Paula Hutson in response to her July 9 e-mail regarding the July 9 meeting.  It indicates that they can talk more offline and to give her a call.  (UPMC2367).

79.     On July 10, 2014 at 11:43 a.m., an e-mail was sent from Meghann Ledford to Michael P. Anderson (HR), John E. Kunicky and Wendy Lubitz regarding the July 9, 2014 meeting.  Meghann indicated that she had arrived halfway through the meeting with Janet Storer.  She noted that Sam was frustrated because he had been placed on a PIP and doesn't feel that Janet was giving him the proper training he needed to succeed.  She felt that he is singling her out and targeting her for all his problems.  D.Apx. 093.

80.     On July 10, 2014 at 11:43 a.m., Meghann Ledford sent an e-mail to Michael Anderson and John Kunicky regarding Sam's PIP.  Ledford noted that Sam told her that he doesn't feel that Storer was providing him with the proper training he needs to succeed.  D.Apx. 093.  She indicated that Fritz wanted to terminate Sam early because "Janet is afraid to be around Sam in the office."  D.Apx. 093.

81.     Brian Fritz does not have any personal knowledge of any threatening behavior by Sam towards Storer.  Any allegation of aggressive behavior by Sam towards Storer is based solely upon accounts by Storer.  Brian Fritz received all of his information regarding Sam's performance from Storer.

82.     On July 10, 2014 at 12:53 p.m., an e-mail was sent from John Krunicky to Meghann Ledford, Wendy Lubitz (Thunell) and Michael P. Anderson instructing Meghann to review the specifics and provide information once vetted.  (UPMC2381).

83.     On July 10, 2014, an e-mail was sent from Sam Mathews's work account to Sam Mathews's with EEOC employee charge information.  (UPMC2482).  P.Apx. 917.

84.     On July 11, 2014 at 9:29 a.m., an e-mail was sent from Meghann Ledford to Janet Storer regarding Sam meeting scheduled at 1:00 p.m. on July 11, 2014 inquiring whether or not Janet would like Meghann to attend.  (UPMC2455-2456).  P.Apx. 918.

85.     On July 11, 2014 at 10:10 a.m., an e-mail was sent from Meghann Ledford to Janet Storer and Paula Hutson regarding "meeting today."  (UPMC2440).

86.     On July 11, 2014 at 2:30 p.m., Meghann Ledford and Sam Mathews met to discuss moving forward with the PIP.  (CL52-53).

87.     On July 11, 2014, Sam Mathews notified Meghann Ledford at a meeting at AOB.  P.Apx. 421.   He intended to file a complaint with the Equal Employment Opportunity Commission.

88.     On July 11, 2014, Sam Mathews received the information from the Rogala & Fowler P&L. (UPMC2374).  P.Apx. 423.

89.     On July 11, 2014, an e-mail was sent from Meghann Ledford to Janet Storer and Paula Hutson indicating that she would like to sit down with Sam to speak with him regarding the PIP moving forward. (UPMC2383).  P.Apx. 921.

90.     On July 14, 2014 at 9:57 a.m., an e-mail was sent from Meghann Ledford to John Kunicky regarding Sam Mathews.  The e-mail summarizes recent meetings with Sam Mathews. It references the July 9 meeting wherein Janet had stated that she didn't feel Sam's progression to be considered halfway done.  Brian, Janet and Paula expressed that they didn't want to continue and would like to terminate him.  Janet said that she didn't feel safe around him and he might punch her in the face.  Meghann later told Janet that Meghann had no problems with Sam and that he apologized and just wanted to start over.  Janet seemed surprised and felt that they were giving him "false hope."  Meghann told her that they are going to continue with PIP and that she needed to give him a chance and give him the information that he needed to get his job done.  Janet agreed to meet with him 3 times the following week. (UPMC2460-2461).  P.Apx. 655-658.

91.     On July 14, 2014 at 12:23 p.m., an e-mail was sent from Paula Hutson to John Krunicky indicating that Janet Storer had asked that she send an e-mail regarding the July 9 meeting.  She noted that it was very obvious that Sam disagreed with the PIP.  (UPMC2469). P.Apx. 922.

92.     On July 14, 2014 at 3:00 p.m., an e-mail was sent from John Krunicky to Meghann Ledford requesting her to write a statement regarding the events of July 9, 2014.  (UPMC2389).

93.     On July 14, 2014 at 3:22 p.m., Meghann Ledford requested that Sam Mathews provide his statement and recollection regarding the meeting they had on July 9.  (CL51).

94.     On July 15, 2014 at 9:16 a.m., Meghann Ledford e-mailed Sam Mathews to see if he received the e-mail regarding July 9.  (CL50).  P.Apx. 1008.

95.     On July 16, 2014 at 7:35 a.m., an e-mail was sent from Janet Storer to John Kunicky cc'd to Brian Fritz (UPMC2377).

96.     On July 16, 2014 at 7:47 a.m., an e-mail was sent from John Kunicky to Meghann Ledford.  (UPMC2377).

97.     On July 16, 2014 at 10:23 a.m., Sam Mathews e-mailed Meghann Ledford documenting various acknowledgments that she had made and indicating that he had completed his prior task, but additional jobs with orthopedics had been delayed because of logistical delays in transitioning the responsibility to other employees.  (CL50).  P.Apx. 1008.

98.     On July 16, 2014 at 11:17 a.m., an e-mail was sent from Meghann Ledford to John Kunicky.  (UPMC2453-2454).

99.     On July 16, 2014 at 3:51 p.m., Sam Mathews sent an e-mail to Meghann Leford memorializing his events in the meeting.  He noted that it was originally announced as a training meeting and he anticipated that it was a training session that had been canceled for 2 consecutive

18

weeks.  It noted that Meghann Ledford began by the meeting by announcing that she was the mid-point of the PIP and that Janet was going to make a statement regarding her assessment of her progress or lack thereof.  Janet stated that she felt that he had not made sufficient progress and was not satisfied with his performance at that point.  Sam noted that he was upset with the assessment since he had on record that several scheduled meetings with her had been canceled and that he asked for the missing information and proceed with the one and only project that she had assigned to him "Rogal & Fowler P&L" although she had promised him this information, it would be forthcoming and had not.  Notes that the information was finally sent to him on July 11, 2015.  (UPMC2374).  Mathews Aff., ¶78.

100.    On July 16, 2014 at 3:52 p.m., Meghann Ledford sent Sam's statements to John E. Kunicky.  (UPMC2373-2374).

101.    On July 16, 2014 at 3:52 p.m., an e-mail was sent from Meghann Ledford to John Kunicky forwarding Sam's statement indicating that it might be too late but wanted to forward it along.  (UPMC2378-2379).

102.    On July 16, 2014 at 4:09 p.m., John Kunicky forwarded Sam's statement to Brian Fritz and Andrea Badway.  (UPMC2373).

103.    On July 16, 2014, an e-mail was sent from Andrea Badway to John Kunicky and Brian Fritz regarding Sam's statement asking whether or not it had been shared with Janet in order to verify and asking for a statement from Paula.  (UPMC2373).

104.    On July 27, 2014, an e-mail was sent from Sam's private account to his work account titled "Prodeism is Discrimination" with a notation "let Paula Hutson know." (UPMC2481).  P.Apx. 923.

105.    On July 28, 2014, a Performance Improvement Plan conclusion document is entered selecting Sam Mathews for termination. (CL106). <u>P.Apx. 926</u>.

106.    On July 29, 2014, Sam Mathews was terminated from his employment at UPMC. (CL98). <u>P.Apx. 926</u>.

107.    On July 29, 2014, an e-mail was sent from Sam Mathews's work e-mail to his home e-mail with an AARP link for age discrimination. (UPMC2483). <u>P.Apx. 930</u>.

108.    A Discharge Authorization for Sam Mathews signed and identifying the date of discharge as July 29, 2014. It is signed off my consultant signature, Meghann Ledford, John Kunicky, Michael Anderson and Brian Fritz. Attached to the authorization form is the description of specific event include dates, times, witness, etc. <u>P.Apx. 924-928</u>.

### B. JEFF MARTIN TESTIMONY

109.    Jeff Martin's birthday is May 22, 1966. <u>D.Apx. 328</u>.

110.    Jeff Martin is a Caucasian. <u>D.Apx. 328</u>.

111.    Sam Mathews and Jeff Martin were co-workers. <u>D.Apx. 329</u>.

112.    Both Sam Mathews and Jeff Martin prepared balance sheets, profit and loss statements and accounts payable. <u>D.Apx. 330</u>. Both Sam Mathews and Jeff Martin were doing financial and a little work for the pediatrics and orthopedics sections after July of 2013. Sam Mathews and Jeff Martin were performing the same tasks. <u>D.Apx. 330</u>.

113.    Jeff Martin underwent a PIP from November 6, 2013 through December 21, 2013. <u>D.Apx. 331</u>. Throughout the entire period, the violations committed by Jeff Martin were considered to be very serious. <u>D.Apx. 331-333</u>.

114.    Jeff Martin underwent a Performance Review for the period December 16, 2012 through December 13, 2013. <u>D.Apx. 334</u>. Jeff Martin was not terminated as a result of the

Performance Improvement Plan. <u>D.Apx. 334</u>. Sam Mathews had told Martin that Sam needed additional training and Jeff Martin agreed with that. <u>D.Apx. 336</u>. Pam Walsh replaced Sam Mathews. <u>D.Apx. 338</u>. Martin believed that Sam did need more training in his position. <u>D.Apx. 338-339</u>.

## C. BRIAN FRITZ TESTIMONY

115.   Fritz does not have any recollection of Storer making any allegation that he had physically threatened her. <u>D.Apx. 255</u>.

116.   Fritz was not aware of Mathews actually physically threatening Janet Storer. <u>D.Apx. 255</u>.

117.   Fritz has no knowledge of UPMC making any effort to investigate alleged physical threats by Sam Mathews to Janet Storer. <u>D.Apx. 255</u>.

118.   If there were threats between Fritz's subordinates, he would have immediately contacted Human Resources and UPP security. <u>D.Apx. 255</u>.

119.   When someone is placed on a Performance Improvement Plan at UPP, they are supposed to approve upon the items listed in the PIP. <u>D.Apx. 256</u>.

120.   Sam was not terminated for reasons that were not in the Performance Improvement Plan. <u>D.Apx. 256</u>.

121.   Brian Fritz did not participate in any way in the mid-point evaluation during Sam's PIP. <u>D.Apx. 256</u>.

122.   Sam's alleged lack of poor competencies was based upon entirely what Janet Storer told Fritz. <u>D.Apx. 257</u>.

123.   Fritz claims that he was unaware that Sam had reached out to Human Resources with complaints about Storer prior to him being placed on a PIP. <u>D.Apx. 257</u>.

21

124.    Fritz did not recall Storer ever making allegations that Sam Mathews was not truthful. <u>D.Apx. 258</u>.

125.    Fritz did not know who Sam was prior to the reorganization and had no interaction with him prior to Sam coming under his supervision. <u>D.Apx. 258</u>.

126.    Fritz is not in a position to say whether one employee is better than the other but simply relies upon the managers. <u>D.Apx. 258</u>.

127.    Fritz does not recall any specific training on corrective action discharge. <u>D.Apx. 258</u>.

128.    Fritz was unfamiliar with the policy from Human Resources titled Equal Employment. <u>D.Apx. 259</u>.

129.    Brian Fritz did not directly provide any of the information contained on deposition Exhibit 5. <u>D.Apx. 259</u>.

130.    Any factual information that Fritz had relative to the PIP was obtained entirely from Janet Storer and Paula Hutson.

131.    Brian Fritz was not at the same physical location where Sam was employed. <u>D.Apx. 260</u>.

132.    Brian Fritz has no personal knowledge as to whether or not Sam knew how to read a profit and loss statement. <u>D.Apx. 261</u>.

133.    Brian Fritz has no personal knowledge of Mr. Mathews being untruthful.

134.    Any information given by Fritz to Kunicky was received from Storer or Hutson regarding Sam's purported insubordination.

135.    Brian Fritz had no criticism of Mr. Mathews's job performance, other than information received from Storer or Hutson. <u>D.Apx. 262</u>.

136.     Sam did not fail to perform any tasks that Fritz told him to perform relative to the PIP. D.Apx. 262.

137.     Fritz had no recollection except for the issues listed in deposition exhibit 10. D.Apx. 262.

138.     Any first-hand information relative to the Performance Improvement Plan came from Storer and Hutson and not from Fritz. D.Apx. 263.

139.     Everything Brian Fritz knew regarding Sam's job performance, what he was doing on a day-to-day basis, his accounting, his reporting, whether he adhered to the PIP, all of that information came from Janet Storer and Paula Hutson and he has no personal independent knowledge as to what his job performance was.

### D.   PAMELA WALSH TESTIMONY

140.     Pamela Walsh's date of birth is September 30, 1958.  D.Apx. 311.

141.     Pamela Walsh has an Associate's Degree in Computerized Accounting.  D.Apx. 311.

142.     Pamela Walsh did not have any information about Sam Mathews's job duties when he was in pediatrics.  D.Apx. 312.

143.     After the reorganization, Pamela Walsh was demoted because she did not have the degree required to keep the position as an Accountant Associates and Financing.  D.Apx. 313.

144.     Pamela Walsh did not directly work with Sam Mathews.  D.Apx. 314.

145.     In July of 2014, she was transitioned back into her former position.  D.Apx. 315.

146.     Janet Storer pulled Pamela Walsh aside and asked if her position would come open whether or not she would be willing to return to the same position Sam Mathews held.  D.Apx. 315.

147.   Pam Walsh provided training to Sam Mathews with regard to his position in orthopedics. D.Apx. 315.

148.   Pam Walsh met with Sam Mathews on three occasions for training. D.Apx. 316.

149.   Walsh struggled with the pediatrics information because there were 800 physicians listed and she had very little information or direction of how to do it and to get the database to function. D.Apx. 319.

150.   Pam Walsh has no reason to dispute that Sam Mathews evaluated the status of the CMU contract and discovered in March of 2013 that the contract had not been invoiced since October of 2013. D.Apx. 320.

151.   Jeff Martin was the individual who was responsible for the CMU billing that had not been billed since March of 2013 and Pam Walsh would have been responsible for it in August of 2013. D.Apx. 321.

152.   Pam Walsh does not have any issue with Sam having completed Dr. Fu's sports billing incorrectly. D.Apx. 321.

153.   Walsh trained Sam Mathews in October 2013, January 24, 2014 and February 26, 2014. D.Apx. 321.

154.   Sam Mathews did not receive training on every aspect of his new responsibilities in orthopedics. D.Apx. 322.

155.   Pam Walsh did not have any contact with Janet Storer or Paula Hutson during the period of time of their interaction with Sam Mathews. D.Apx. 322.

156.   Janet Storer told Pam Walsh that she felt that Sam had been threatening but Walsh decided not to get involved with the situation. D.Apx. 322.

157.    Pam Walsh had no interaction or minimal interaction because her position did not involve anything to do with Accounts Payable.  D.Apx. 323.

### E.  PAULA HUTSON TESTIMONY

158.    Paula Hutson was Sam Mathews Supervisor.  D. Apx. 268

159.    In 2013 and 2014, Paula Hutson was a Lead Analyst and was responsible for the Orthopedic Pediatric Finance Pod within the Physicians Services Division at University of Pittsburgh Physicians.  D.Apx.268

160.    Paula Hutson performed a performance review for Sam Mathews for December 2012 through December 2013 which would have been after his transfer to the Orthopedic and Pediatric Pod.  D.Apx.268

161.    She rated Sam Mathews from December 2012 through December 2013 as a solid, good, strong performer.

162.    Paula Hutson has nothing negative to say about Sam Mathews's performance from December 2012 through December 2013.  D.Apx.269

163.    Paula had discussed the number of hours that Sam put in every day with Janet immediately after him contacting HR.  D.Apx.269

164.    As of May 12, 2014, Paula Hutson had no issues regarding Sam's performance. D.Apx. 269

165.    It was Janet Storer's idea to place Sam on a Performance Improvement Plan. D.Apx. 269

166.    Hutson does not recall having any communication issues with Sam prior to or during the Performance Improvement Plan.  D.Apx. 270

167.    Paula Hutson was both responsible for orthopedics and pediatrics for financial reporting.  D.Apx. 271

168.    With regard to the areas of improvement for Sam in the Performance Improvement Plan, Janet Storer created those areas.  D.Apx. 271

169.    As to the training and profit and loss for orthopedics, Sam Mathews required additional training.  D.Apx. 272

170.    Sam needed to learn the transfer of the profit and loss out of a computer program known as PeopleSoft and manually keying the information into a P&L model template.  D.Apx. 272; D.Apx. 273

171.    A break-even agreement is where revenue expenses equal zero.  D.Apx. 272

172.    As to reconciliation, he had to match the expenses to the faculty recruit and had to reconcile, however, Hutson could recall Sam's performance in this regard.  D.Apx. 273

173.    Hutson had no idea and didn't know what the reference was to a current cost center, Bar invoicing tasks that Sam did not complete.  D.Apx. 274

174.    Sam had compiled a working copy of the Rogal & Fowler fiscal year for 2015 on June 14, 2014.  D.Apx. 274

175.    In order to compile the Rogal & Fowler 2015 P&L year-end, he would have required the Net Patient Revenue ("NPR") figures which were to be obtained from Janet Storer. D.Apx. 274-275

176.    Hutson thought he was in need of the percentages to be allocated to the group in order to prepare the compilation.  D.Apx. 275

177.     There was a PIP meeting attended by Sam, Paula Hutson, Janet Storer and Meghann Ledford on July 9, 2014 wherein Sam was told that he had not completed the Rogal & Fowler tasks set forth in the PIP.  <u>D.Apx. 276</u>

178.     Janet Storer was responsible for providing the NPR amounts to Sam.  <u>D.Apx.276</u>

179.     Janet Storer did not provide the NPR amounts to Sam until after the July 9 meeting yet continued to criticize Sam for not completing the Regal & Fowler compilations.  <u>D.Apx. 276</u>

180.     Hutson cannot recall whether or not Sam was threatening towards Janet.  <u>D.Apx. 277</u>

181.     As to the information regarding the PIP, Sam had turned in all of the documentation related to DBC audits.  <u>D.Apx.  278</u>.

182.     Sam was in compliance with the hospital support input data once he corrected it, as outlined on the PIP.  <u>D.Apx. 279</u>

183.     As to Rogal & Fowler, Sam did not have the data he needed compile the P&L. <u>D.Apx. 279</u>

184.     Other than concerns regarding hours, Hutson never had any issues with Sam's job performance.  <u>D.Apx. 280</u>

185.     Hutson had no role in the decision-making to terminate Sam.  <u>D.Apx. 280</u>

186.     Sam required additional training to perform his new job functions.  <u>D.Apx. 281</u>

### F.  <u>MEGHANN LEDFORD TESTIMONY</u>

187.     Meghann Ledford has a Bachelor's Degree from Penn State, 2007.  <u>D.Apx. 286</u>.

188.     Her prior experience includes positions as a retail store manager and a human resource generalist.  <u>D.Apx. 286</u>.

189.    She holds the position of Human Resource Consultant at UPMC since September of 2013.  <u>D.Apx. 286</u>.

190.    Sam's PIP was her second PIP with the first being of Jeff Martin.  <u>D.Apx. 287</u>.

191.    She was not in a position to evaluate the strengths and weaknesses of Mr. Mathews's job performance other than what was told to her by Janet Storer and Paula Hutson.  <u>D.Apx. 287</u>.

192.    She has no background in accounting.

193.    She would not be in a position to assess the actual financial task with someone such as Mr. Mathews.  <u>D.Apx. 288</u>.

194.    The entire PIP was prepared by Janet Storer and Paula Hutson.  <u>D.Apx. 288</u>.

195.    As far as the PIP, she was entirely relying upon Janet Storer and Paula Hutson to provide information.  <u>D.Apx. 288</u>.

196.    She had no knowledge regarding what tasks he performed on a day-to-day basis.  <u>D.Apx. 288</u>.

197.    Prior to the PIP, she had never met Sam Mathews.  <u>D.Apx. 289</u>.

198.    Janet had come to Meghann for the PIP at the same time that Sam had contacted Meghann to file a grievance against Janet.  <u>D.Apx. 289-290</u>.

199.    The entirety of any criticism that Meghann Ledford has with Sam Mathews is based upon what Janet Storer told her.  <u>D.Apx. 289-290</u>.

200.    No efforts were made to independently verify the information provided by the manager and she just goes "off of what management tells us."  <u>D.Apx.  289-290</u>.

201.    She can't remember whether Mathews came to her first regarding the grievance or whether Storer came to her first.  <u>D.Apx.  289-290</u>.

202.    Sam Mathews contacted her telling her that he had told Janet Storer that he had contacted HR and the PIP came approximately one month after.  D.Apx. 291.

203.    When HR signed the PIP for Sam Mathews, there was no effort made to verify the information.

204.    Meghann Ledford was 29 years old at the time of Sam's termination.  D.Apx. 292.

205.    She was aware that training sessions had been canceled by Janet and Paula.  D.Apx. 293.

206.    The training sessions were canceled because they were scheduled on days that Janet Storer was off work.  D.Apx. 293.

207.    No consideration was ever given or evaluation as to whether or not there was an ageist or racist component to placement on the PIP.  D.Apx. 294.

208.    UPMC does not provide training regarding Title VII of the Civil Rights Act.  D.Apx. 294.

209.    Meghan Ledford had never been trained on Title VII of the Civil Rights Act.  D.Apx. 294-295.

210.    UPMC did not provide any training with regard to the Age Discrimination in Employment Act.  D.Apx. 294-295

211.    Meghann Ledford had no training regarding the Age Discrimination in Employment Act.  D.Apx. 295.

212.    No efforts were made to contact any of Sam's co-employees as to his job performance prior to termination.  D.Apx. 294-295

213.    Fritz and Storer had requested that Sam be terminated 17 days prior to the conclusion of his PIP.  D.Apx. 294-295.

29

214.    On July 16th, Mathews informed Ledford that his training sessions had been canceled for two consecutive weeks. D.Apx. 294-295.

215.    It is cause for discipline for a supervisor who refuses to train his or her subordinate but neither Storer or Hutson were disciplined. D.Apx. 294-295.

216.    No efforts were made to make a determination as to whether or not Storer was discriminating against Sam. D.Apx. 297.

217.    All of the documentation provided by the PIP was provided by Storer to Ledford. D.Apx. 297.

218.    There is no policy at UPMC addressing or investigating whether or not PIP's are discriminatorily motivated. D.Apx.   .

219.    No grievance was ever filed against UPMC were ever reversed once someone had been fired to the best of Ledford's knowledge.

220.    Mike Anderson is approximately 40 years old. D.Apx. 303-304.

221.    John Kunicky is in his late 30's and both are white males.

222.    Despite the fact that Janet had told Ledford that Sam had made some sort of comment about meeting after work, she was never able to corroborate it and never witnessed it. D.Apx. 305.

223.    Jeff Martin had misrepresented his credentials to UPMC, yet was not fired. D.Apx. 305.

### G. JANET STORER TESTIMONY

224.    At the time of the events concerning Sam's termination, she was the Manager of Finance. D.Apx. 215.

225.     She was responsible for the financial information for the Department of Orthopedic Surgery and for Pediatrics at Children's Hospital, for UPP in the Physicians Service Division. D.Apx. 215.

226.     She was supervising two employees at the time, Jeff Martin and Paula Hutson.

227.     Paula Hutson was responsible for the supervision of Jeff Martin and Sam Mathews. D.Apx. 215.

228.     The process of transferring Sam into "other areas" in finance began in the end of January 2014. D.Apx. 216.

229.     Sam Mathews began told her that he was sick, his wife was sick and told them his age which she described as "sixty something" and indicated that he was going to report her to Human Resources. Sam indicated that he was going to file a grievance with Human Resources. She then said to him that he should file the grievance with Human Resources. D.Apx. 216.

230.     One of Storer's criticisms was that Sam would talk over her and not take notes, but he would not come back to her personally with questions, but would address the questions to other employees. D.Apx. 216.

231.     Janet Storer criticized Sam for paying a bill without a receipt. D.Apx. 218.

232.     Janet Storer indicated that there was a question around his hours. Although she did not monitor his times or have any proof that Sam did not work the appropriate hours. D.Apx. 219.

233.     In 12 years as an employee at UPP or UPMC, Janet Storer has only been involved in one firing, Sam Mathews. D.Apx. 220.

234.     Janet Storer did not review Sam's performance reviews until the day before her deposition. D.Apx. 220.

235.   When Storer made the decision to place Sam on a PIP or terminate him, she did not go through his past performance reviews for the prior 10 years, all of which were excellent. D.Apx. 220.

236.   Storer indicated that she did not look at his performance reports from prior years but Paula had told her that he had good performance reports from her, but she did not personally review them. D.Apx. 220-221.

237.   The only "threat" that Sam made that Storer could provide was that Sam said, "I would like to see you outside of work." Storer interpreted this statement as a threat. D.Apx. 221.

238.   Janet Storer was fully aware that Mr. Mathews had contacted Human Resources and complained that he was not being treated fairly. D.Apx. 222.

239.   Janet Storer has no recollection of having any conversation with Sam regarding his PIP. D.Apx. 223

240.   As to Rogal & Fowler, if Sam Mathews did not have the net patient revenue figures, he would not be able to complete the P&L. D.Apx. 224.

241.   Doesn't remember whether or not Sam told Janet Storer on July 8, 2014 he had insufficient information to complete the Profit & Loss statement. D.Apx. 224.

242.   Janet Storer had no recollection whatsoever of Sam asking for additional information to complete the Rogal & Fowler 2015 P&L. D.Apx. 224.

243.   Janet Storer contended the Rogal & Fowler P&L was not eventually completed.

244.   If Sam completed the P&L as he contends, he would have completed that requirement of the PIP. D.Apx. 225.

245.   Janet Storer was unable to identify the specific transaction for which he did not have a receipt. D.Apx. 225.

32

246.   Dr. Fu's cell phone was never actually suspended.  D.Apx. 226.

247.   Sam Mathews is the only employee that Janet Storer ever terminated while at UPMC.  D.Apx. 226.

248.   Net patient revenues are the payments that are made for a doctor's services and are recorded per the individual physician.  D.Apx. 227.

249.   From time to time, it became necessary for Janet Storer to cancel the meetings with Sam Mathews that were scheduled for the PIP.  D.Apx. 227-228.

250.   The only time security was ever contacted regarding Sam was during his termination when the PIP was concluded.

251.   Janet Storer attended a meeting on June 25, 2014 in Brian Fritz's office wherein Sam handed out the various documents at the meeting to discuss the issues within the PIP and Janet Storer did not read the documents at that time.  D.Apx. 228.

252.   Sam's attitude was not the reason for the PIP or the termination.  D.Apx. 231.

253.   Sam had told Janet Storer repeatedly that he felt that he was being treated unfairly. D.Apx. 231.

254.   Sam was the oldest Financial Analyst in the department.  D.Apx. 231.

255.   Failure to pay Dr. Fu's phone bill alone was not enough to place him on a PIP.

256.   Storer wanted to accuse Sam of lying, but Human Resources would not approve it.

257.   Prior to placing Sam on the PIP for the CMU contract, Janet Storer was unaware that Pam Walsh had paid the bill previously, not in conformance with the terms of the CMU Athletic contract.  D.Apx. 235.

258.   During the July 9, 2014 meeting with Sam Mathews, he once again expressed his concerns that he was not being treated fairly.  D.Apx. 236.

33

259.    Janet Storer has no recollection of the initial meeting with Sam Mathews regarding the presentation of his Performance Improvement Plan.  D.Apx. 237.

260.    Janet Storer was aware that Mr. Mathews was of foreign descent.  D.Apx. 239.

261.    Sam Mathews never received a final written warning.  D.Apx. 244.

262.    Sam Mathews had never been suspended.  D.Apx. 244.

263.    Janet Storer was never trained on the process of corrective action.  D.Apx. 244.

## H.  SAM MATHEWS DEPOSITION

264.    As of February 15, 2017, Sam Mathews was 63 years old.  D.Apx. 159

265.    Sam Mathews's date of birth is July 18, 1953.  D.Apx. 159

266.    Sam Mathews was born in Singapore.  D.Apx. 159

267.    Sam Mathews has two Bachelor's Degrees.  He has a Bachelor of Commerce from Bangalore University India and a Bachelor of Science and Business Administration from Olivet Nazarene University in Bourbonnais, Illinois.  D.Apx. 159

268.    Sam Mathews was first hired at University of Pittsburgh Physicians in December of 2001.  D.Apx. 160

269.    Sam Mathews was forced into retirement due to his termination at University of Pittsburgh Physicians.  D.Apx. 162

270.    Sam Mathews alleges that Janet Storer discriminated against him because of his name and because of his national origin.  D.Apx. 163

271.    Sam Mathews received a promotion in 2012 to an Intermediate Financial Analyst.  D.Apx. 165

272.    Sam Mathews always got along fine with Paula Hutson, who was his direct supervisor.  D.Apx. 166

34

273.    Sam Mathews always got along with Jeff Martin who had certain assigned tasks that Sam had assigned tasks.  D.Apx. 166

274.    Sam Mathews experienced a hostile work atmosphere due to the conduct of Janet Storer.  D.Apx. 167

275.    In 2013, the Finance Department was reorganized or restructured.  He no longer reported to the heads of the Business Unit, but instead to a centralized reporting structure.  D.Apx. 167

276.    After the reorganization, Sam Mathews continued to report to Paula Hutson.

277.    Jeff Martin lost his job because he did not have a requisite college degree.  D.Apx. 168

278.    Paula Hutson thought very highly of Sam Mathews.  D.Apx. 169

279.    After the reorganization, Sam took over Jeff Martin's tasks, including depositing of checks for the Department of Pediatrics.  D.Apx. 170

280.    Sam's supervisor was Paula Hutson, but she was reporting to Janet Storer as of February 4, 2014.  D.Apx. 170

281.    After the transfer of February 4, 2014, Sam took over all of the tasks that Pam Walsh had been doing prior to that point in time and some of the tasks that Jeff Martin had taken over.  D.Apx. 171

282.    Sam Mathews was subjected to hostility from Janet Storer who he thought viewed her as an old brown guy from February 4 through July 7, 2014.  D.Apx. 171

283.    Storer specifically indicated that Sam didn't have any interest in America's past time, which he personally interpreted as being a racist comment.  D.Apx. 173

284.     Sam Mathews interpreted comments regarding Naveed Ismal wherein Storer stated that he was a snazzy dresser and Dr. Fu wouldn't have any trouble working with an Indian like that in an organizational meeting.  D.Apx. 172

285.     Sam Mathews continued to feel hostility from Janet Storer once he began to work in Oakland.  D.Apx. 173

286.     In the summer of 2013, Kathleen Osterreider announced her retirement, at which point in time, Janet Storer instructed Kathy Osterreider to show Sam Mathews certain portions of her job tasks.  Upon training, it became evident that those were tasks for which Sam Mathews had no training or exposure to and needed additional training to do those tasks.  D.Apx. 173

287.     Kathy Osterreider was a Senior Financial Analyst.  D.Apx. 173

288.     Janet Storer is responsible for training Sam Mathews with regard to the Rogal & Fowler Profit & Loss.  D.Apx. 175

289.     Sam Mathews took over the Orthopedic CHP and Rogal & Fowler financial analysis from June through July of 2014.  D.Apx. 175

290.     Janet Storer did not provide all of the details necessary to complete the Rogal & Fowler P&L until after the mid-point meeting of July 9, 2014.  D.Apx. 176

291.     Sam Mathews made it very clear that he was unable to do the Senior Financial Analyst work to Kathy Osterreider and to Janet Storer without additional training.  D.Apx. 176

292.     Sam Mathews perceived that Storer was somehow intimidated by Sam Mathews and appeared to be frustrated or disgusted with Mathews.  D.Apx. 177

293.     Kathy Osterreider left UPP at the end of January 2014.  D.Apx. 178

294.     Janet Storer berated Sam Mathews and impeded him from doing his job by not providing information that he needed to be able to complete the task that the assigned to him and

36

it continued to be a hostile environment from February 4, 2014 until the time of his termination. D.Apx. 178

295.    Pam Walsh was unable to work in the position of Intermediate Financial Analyst because she lacked qualifications.  D.Apx. 179

296.    Pam Walsh's training consisted of physically showing Sam Mathews where the folders were and the general set up of the office. D.Apx. 179-180; D.Apx. 183

297.    In February 2014, Sam took over all of the tasks that had previously been performed by Pam Walsh.  D.Apx. 180

298.    Janet Storer had a habit of berating Sam Mathews in the open office.  D.Apx. 181

299.    Sam Mathews reported to Paula Hutson in the chain of command even after the reorganization.  D.Apx. 185

300.    Sam filed Dr. Fu's bill in error because the front page of the bill showed a zero balance.  The bill was in fact paid and paid well in advance and there was no lapse of service.  The bill was paid by Matt Bosco of UPMC Corporate.  However, Janet Storer berated Sam for the misfiling.  D.Apx. 185-186

301.    Sam Mathews had no prior experience with the computer program Clarity using Crystle.  These were previously Kathy Osterreider's duties and requested for but did not receive training in these computer programs.  D.Apx. 187

302.    Sam had been criticized for assignments for which he had not been provided the necessary material and data.  D.Apx. 188

303.    Sam had contacted UPMC's HR office after their return from vacation on May 20, 2014.  D.Apx. 188-189

304.    On May 12, 2014, Sam Mathews contacted HR because he thought he was being discriminated against by Janet Storer.  He had hoped to bring the matter to a "discussion" so they could iron out the confusion and expected help from HR in this regard.  D.Apx. 190

305.    After his complaints, Janet Storer was hostile towards Sam Mathews.  D.Apx. 191

306.    In response to Sam contacting HR, Storer responded that she had also contacted HR.  It was Sam's perception that she was determined to have Sam terminated in some fashion as soon as possible.  D.Apx. 191

307.    Storer had instructed Sam to proceed to HR and had rebuffed his attempts to speak to her regarding her behavior towards Sam.  D.Apx. 191

308.    With regard to the conversation where Sam allegedly threatened Janet, he had asked to speak with her privately rather than the public scolding that he continued to receive from Storer. D.Apx. 194

309.    When presented with the PIP, Sam noted that he had a personal problem with Janet Storer.  He had completed the overwhelming majority of the items identified on the PIP and all such issues have been resolved.  D.Apx. 195

310.    The issues of receipts for expenses, reconciling and approving expenses, borrow invoicing and e-vouchers for approval had all been resolved prior to the PIP.  D.Apx. 196

311.    There were several meetings that Janet was supposed to train Sam Mathews, but she never showed up or canceled or postponed.  D.Apx. 198

312.    After July 7, 2014, Pam Walsh resumed Sam's position in Oakland.  D.Apx. 203

313.    During the termination meeting, Paula Hutson was crying and openly weeping. D.Apx. 203

314.   Mathews thought that Storer's intention was to replace him with Pam Walsh.

D.Apx. 204

315.   Storer continued to have bias against Sam by failing to offer him to lunches; in

failing to invite him to meetings that were provided for other employees.   D.Apx. 206

RESPECTFULLY SUBMITTED:

PATBERG, CARMODY & GING

DATE: March 30, 2017          By:   /s/ Rolf Louis Patberg, Esquire
                                     Rolf Louis Patberg, Esquire
                                     PA I.D. No.:  65185

                                     Patberg, Carmody & Ging
                                     Deutschtown Center
                                     801 Vinial Street – Third Floor
                                     Pittsburgh, PA  15212
                                     (412) 232-3500

                                     Attorney for Plaintiff.

**JURY TRIAL DEMANDED**