IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KUZHIKALAYIH MATHEWS a/k/a SAMUEL "SAM" MATHEWS, | ) ) | CIVIL DIVISION |
| | ) | NO.: 16-cv-1148-AJS |
| Plaintiff, | ) ) | |
| | ) | JUDGE MARK KEARNEY |
| v. | ) | |
| | ) | |
| UNIVERSITY OF PITTSBURGH PHYSICIANS a/k/a UNIVERSITY OF PITTSBURGH PHYSICIANS, | ) ) ) | |
| | ) | |
| Defendant. | | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

AND NOW, comes Kuzhikakayih Mathews a/k/a Samuel "Sam" Matthews, by and through his counsel and files the foregoing Proposed Jury Instructions and respectfully avers the following:

## RACE/ETHNIC DISCRIMINATION

**5.0    Title VII Introductory Instruction**

In this case the Plaintiff Sam Mathews makes a claim under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex, or national origin.

More specifically, Sam Mathews claims that he was placed on a Performance Improvement Plan and subsequently terminated by the Defendant University of Pittsburgh Physicians because of Sam Mathews' national origin/race.

University of Pittsburgh Physicians denies that Sam Mathews was discriminated against in any way. Further, University of Pittsburgh Physicians asserts that University of Pittsburgh Physicians was justified in firing Sam Mathews.

I will now instruct you more fully on the issues you must address in this case.

_____ ACCEPTED        _____ DENIED        _____ MODIFIED

1

### 5.1.1   Elements of a Title VII Claim – Disparate Treatment – Mixed-Motive

In this case Sam Mathews is alleging that University of Pittsburgh Physicians [describe alleged disparate treatment] Sam Mathews. In order for Sam Mathews to recover on this discrimination claim against University of Pittsburgh Physicians, Sam Mathews must prove that University of Pittsburgh Physicians intentionally discriminated against Sam Mathews. This means that Sam Mathews must prove that his national origin/race was a motivating factor in University of Pittsburgh Physicians' decision to place him on a Performance Improvement Plan and subsequently terminating Sam Mathews.

To prevail on this claim, Sam Mathews must prove both of the following by a preponderance of the evidence:

First: University of Pittsburgh Physicians placed him on a Performance Improvement Plant and subsequently terminating Sam Mathews; and

Second: Sam Mathews' national origin/race was a motivating factor in University of Pittsburgh Physicians' decision.

Although Sam Mathews must prove that University of Pittsburgh Physicians acted with the intent to discriminate, Sam Mathews is not required to prove that University of Pittsburgh Physicians acted with the particular intent to violate Sam Mathews' federal civil rights.

In showing that Sam Mathews' national origin/race was a motivating factor for University of Pittsburgh Physicians' action, Sam Mathews is not required to prove that his national origin/race was the sole motivation or even the primary motivation for University of Pittsburgh Physicians' decision. Sam Mathews need only prove that Sam Mathews' national origin/race played a motivating part in University of Pittsburgh Physicians' decision even though other factors may also have motivated University of Pittsburgh Physicians.

As used in this instruction, Sam Mathews' national origin/race was a "motivating factor" if his national origin/race played a part in University of Pittsburgh Physicians' decision to place him on a Performance Improvement Plan and subsequently terminate Sam Mathews.

_____ ACCEPTED        _____ DENIED        _____ MODIFIED

**5.1.2   Elements of a Title VII Claim – Disparate Treatment – Pretext**

In this case Sam Mathews is alleging that placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews. In order for Sam Mathews to recover on this discrimination claim against University of Pittsburgh Physicians, Sam Mathews must prove that University of Pittsburgh Physicians intentionally discriminated against Sam Mathews. This means that Sam Mathews must prove that his national origin/race was a determinative factor in University of Pittsburgh Physicians' decision to place him on a Performance Improvement Plan and subsequently terminating Sam Mathews.

To prevail on this claim, Sam Mathews must prove both of the following by a preponderance of the evidence:

First: University of Pittsburgh Physicians placed him on a Performance Improvement Plan and subsequently terminated Sam Mathews; and

Second: Sam Mathews' national origin/race was a determinative factor in University of Pittsburgh Physicians' decision.

Although Sam Mathews must prove that University of Pittsburgh Physicians acted with the intent to discriminate, Sam Mathews is not required to prove that University of Pittsburgh Physicians acted with the particular intent to violate Sam Mathews' federal civil rights. Moreover, Sam Mathews is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

For example, you have been shown statistics in this case. Statistics are one form of evidence that you may consider when deciding whether a defendant intentionally discriminated against a plaintiff. You should evaluate statistical evidence along with all the other evidence received in the case in deciding whether University of Pittsburgh Physicians intentionally discriminated against Sam Mathews.

University of Pittsburgh Physicians has given a nondiscriminatory reason for its placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews. If you disbelieve University of Pittsburgh Physicians' explanations for its conduct, then you may, but need not, find that Sam Mathews has proved intentional discrimination. In determining whether University of Pittsburgh Physicians' stated reason for its actions was a pretext, or excuse, for discrimination, you may not question University of Pittsburgh Physicians' business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of University of Pittsburgh Physicians or believe it is harsh or unreasonable. You are not to consider University of Pittsburgh Physicians' wisdom. However, you may consider whether University of Pittsburgh Physicians' reason is merely a cover-up for discrimination.

Ultimately, you must decide whether Sam Mathews has proven that his national origin/race was a determinative factor in placing him on a Performance Improvement Plan and subsequently

3

terminating Sam Mathews. "Determinative factor" means that if not for Sam Mathews' national origin/race, the placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews would not have occurred.

_____ ACCEPTED       _____ DENIED       _____ MODIFIED

### 5.1.7   Elements of a Title VII Claim – Retaliation

Sam Mathews claims that University of Pittsburgh Physicians discriminated against him because of Sam Mathews' report of Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing a claim with the Equal Employment Opportunity Commission.

To prevail on this claim, Sam Mathews must prove all of the following by a preponderance of the evidence:

First: Sam Mathews' report of Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing of claim with the Equal Employment Opportunity Commission.

Second: Sam Mathews was subjected to a materially adverse action at the time, or after, the protected conduct took place.

Third: There was a causal connection between placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews and Sam Mathews' report of Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing of claim with the Equal Employment Opportunity Commission.

Concerning the first element, Sam Mathews need not prove the merits of his report of Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing of claim with the Equal Employment Opportunity Commission, but only that he was acting under a reasonable, good faith belief that Sam Mathews' right to be free from discrimination on the basis of national origin/race was violated.

Concerning the second element, the term "materially adverse" means that Sam Mathews must show being placed on a Performance Improvement Plan and subsequently terminated was serious enough that it well might have discouraged a reasonable worker from reporting Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing of claim with the Equal Employment Opportunity Commission.

Concerning the third element, that of causal connection, that connection may be shown in many ways.  For example, you may or may not find that there is a sufficient connection through timing, that is University of Pittsburgh Physicians' action followed shortly after University of Pittsburgh Physicians became aware of Sam Mathews' report of Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing a claim with the Equal Employment Opportunity Commission. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Sam Mathews or a change in demeanor toward Sam Mathews.

Ultimately, you must decide whether Sam Mathews' report of Janet Storer's conduct to

Human Resources; statement of intention to file a discrimination claim and filing a claim with the Equal Employment Opportunity Commission had a determinative effect on placing him on a Performance Improvement Plan and subsequent termination. "Determinative effect" means that if not for Sam Mathews' report of Janet Storer's conduct to Human Resources; statement of intention to file a discrimination claim and filing a claim with the Equal Employment Opportunity Commission, being placed on a Performance Improvement Plan and subsequent termination would not have occurred.

_____ ACCEPTED        _____ DENIED        _____ MODIFIED

### 5.4.1   Title VII Damages – Compensatory Damages – General Instruction

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not University of Pittsburgh Physicians should be held liable.

If you find by a preponderance of the evidence that University of Pittsburgh Physicians intentionally discriminated against Sam Mathews by placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews, then you must consider the issue of compensatory damages.  You must award Sam Mathews an amount that will fairly compensate him for any injury he actually sustained as a result of University of Pittsburgh Physicians' conduct. The damages that you award must be fair compensation, no more and no less. The award of compensatory damages is meant to put Sam Mathews in the position he would have occupied if the discrimination had not occurred. Sam Mathews has the burden of proving damages by a preponderance of the evidence.

Sam Mathews must show that the injury would not have occurred without University of Pittsburgh Physicians' act. Sam Mathews must also show that University of Pittsburgh Physicians' act played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of University of Pittsburgh Physicians' act. This test — a substantial part in bringing about the injury — is to be distinguished from the test you must employ in determining whether University of Pittsburgh Physicians' actions were motivated by discrimination. In other words, even assuming that University of Pittsburgh Physicians' actions were motivated by discrimination, Sam Mathews is not entitled to damages for an injury unless University of Pittsburgh Physicians' discriminatory actions actually played a substantial part in bringing about that injury.

In determining the amount of any damages that you decide to award, you should be guided by common sense. You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Sam Mathews experienced as a consequence of University of Pittsburgh Physicians' placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews. No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Sam Mathews would have earned, either in the past or in the future, if he had continued in employment with University of Pittsburgh Physicians. These elements of

7

recovery of wages that Sam Mathews would have received from University of Pittsburgh Physicians are called "back pay" and "front pay". Under the applicable law, the determination of "back pay" and "front pay" is for the court. "Back pay" and "front pay" are to be awarded separately under instructions that I will soon give you, and any amounts for "back pay "and "front pay" are to be entered separately on the verdict form.

You may award damages for monetary losses that Sam Mathews may suffer in the future as a result of University of Pittsburgh Physicians' placing Sam Mathews on a Performance Improvement Plan and subsequently terminating Same Mathews. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, he may find it more difficult to be employed in the future, or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Sam Mathews would have earned in the future from University of Pittsburgh Physicians if he had retained the job.

As I instructed you previously, Sam Mathews has the burden of proving damages by a preponderance of the evidence. But the law does not require that Sam Mathews prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

You are instructed that Sam Mathews has a duty under the law to "mitigate" his damages--that means that Sam Mathews must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by University of Pittsburgh Physicians. It is University of Pittsburgh Physicians' burden to prove that Sam Mathews has failed to mitigate. So if University of Pittsburgh Physicians persuades you by a preponderance of the evidence that Sam Mathews failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Sam Mathews' damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

_____ ACCEPTED          _____ DENIED          _____ MODIFIED

8

### 5.4.2   Title VII Damages – Punitive Damages

Sam Mathews claims the acts of University of Pittsburgh Physicians were done with malice or reckless indifference to Sam Mathews' federally protected rights and that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of University of Pittsburgh Physicians personally acted with malice or reckless indifference to Sam Mathews' federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.  I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages.  The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish University of Pittsburgh Physicians.  You should also consider whether actual damages standing alone are sufficient to deter or prevent University of Pittsburgh Physicians from again performing any wrongful acts it may have performed.  Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those University of Pittsburgh Physicians may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award.  That is, in deciding the amount of punitive damages, you should consider the degree to which University of Pittsburgh Physicians should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter University of Pittsburgh Physicians or others from committing similar wrongful acts in the future.

The extent to which a particular amount of money will adequately punish a defendant, and the extent to which a particular amount will adequately deter or prevent future misconduct, may depend upon the defendant's financial resources.  Therefore, if you find that punitive damages should be awarded against University of Pittsburgh Physicians, you may consider the financial resources of University of Pittsburgh Physicians in fixing the amount of those damages.

_____ ACCEPTED        _____ DENIED        _____ MODIFIED

## AGE DISCRIMINATION

**8.0     ADEA Introductory Instruction**

In this case the Plaintiff , Sam Mathews has made a claim under the Federal Civil Rights statute that prohibits age discrimination against an employee, if that person is 40 years of age or older. This statute is known as the Age Discrimination in Employment Act or "ADEA."

Specifically, Sam Mathews claims that he was placed on a Performance Improvement Plan and subsequently terminated by the Defendant University of Pittsburgh Physicians because of Sam Mathews' age.

University of Pittsburgh Physicians denies that Sam Mathews was discriminated against because of his age. Further, University of Pittsburgh Physicians asserts that it did not discriminate against Sam Mathews

I will now instruct you more fully on the issues you must address in this case.

_____ ACCEPTED          _____ DENIED          _____ MODIFIED

11

### 8.1.1   Elements of an ADEA Claim – Disparate Treatment

In this case Sam Mathews is alleging that he was placed on a Performance Improvement Plan and University of Pittsburgh Physicians subsequently terminated Sam Mathews. In order for Sam Mathews to recover on this discrimination claim against University of Pittsburgh Physicians, Sam Mathews must prove that University of Pittsburgh Physicians intentionally discriminated against Sam Mathews. This means that Sam Mathews must prove that his age was a determinative factor in University of Pittsburgh Physicians' decision to place Sam Mathews on a Performance Improvement Plan and subsequently terminate Sam Mathews.

To prevail on this claim, Sam Mathews must prove both of the following by a preponderance of the evidence:

First: University of Pittsburgh Physicians terminated Sam Mathews; and

Second: Sam Mathews' age was a determinative factor in University of Pittsburgh Physicians' decision.

Although Sam Mathews must prove that University of Pittsburgh Physicians acted with the intent to discriminate, Sam Mathews is not required to prove that University of Pittsburgh Physicians acted with the particular intent to violate Sam Mathews' federal civil rights. Moreover, Sam Mathews is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

For example, you have been shown statistics in this case. Statistics are one form of evidence that you may consider when deciding whether a defendant intentionally discriminated against a plaintiff. You should evaluate statistical evidence along with all the other evidence received in the case in deciding whether University of Pittsburgh Physicians intentionally discriminated against Sam Mathews.

University of Pittsburgh Physicians has given a nondiscriminatory reason for its decision to place Sam Mathews on a Performance Improvement Plan and subsequently terminate him. If you disbelieve University of Pittsburgh Physicians' explanations for its conduct, then you may, but need not, find that Sam Mathews has proved intentional discrimination.  In determining whether University of Pittsburgh Physicians' stated reason for its actions was a pretext, or excuse, for discrimination, you may not question University of Pittsburgh Physicians' business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of University of Pittsburgh Physicians or believe it is harsh or unreasonable. You are not to consider University of Pittsburgh Physicians' wisdom. However, you may consider whether University of Pittsburgh Physicians' reason is merely a cover-up for discrimination.

In this case Sam Mathews is claiming that he was replaced by a younger employee Pamela Walsh. It is not necessary for Sam Mathews' replacement to be under 40 years of age. The question is whether Pamela Walsh is substantially younger than Sam Mathews.

**Concluding instruction:**

12

Ultimately, you must decide whether Sam Mathews has proven that his age was a determinative factor in University of Pittsburgh Physicians' decision to place Sam Mathews on a Performance Improvement Plan and subsequently terminate him. "Determinative factor" means that if not for the plaintiff's age, the placement on a Performance Improvement Plan and subsequent termination of Sam Mathews would not have occurred.

_____ ACCEPTED        _____ DENIED        _____ MODIFIED

13

### 8.1.5   Elements of an ADEA Claim – Retaliation

Sam Mathews claims that University of Pittsburgh Physicians discriminated against him because of Sam Mathews' reporting Janet Storer's conduct to Human Resources and filing a claim with the Equal Employment Opportunity Commission.

To prevail on this claim, Sam Mathews must prove all of the following by a preponderance of the evidence:

First: Sam Mathews' report of Janet Storer's conduct to Human Resources representative, Meghan Ledford; statement of intention to file an Equal Employment Opportunity Commission claim.

Second: Sam Mathews was subjected to a materially adverse action at the time, or after, the protected conduct took place.

Third: There was a causal connection between placing Sam Mathews on a Performance Improvement Plan and subsequently terminating him and Sam Mathews' reporting Janet Storer's conduct to Human Resources representative Meghan Ledford; statement of intention to file an Equal Employment Opportunity Commission claim.

Concerning the first element, Sam Mathews need not prove the merits of his report of Janet Storer's conduct to Human Resources representative Meghan Ledford; statement of intention to file an Equal Employment Opportunity Commission claim but only that he was acting under a reasonable, good faith belief that Sam Mathews' rights under the Age Discrimination in Employment Act were violated.

Concerning the second element, the term "materially adverse" means that Sam Mathews must show being placed on a Performance Improvement Plan and subsequent termination was serious enough that it well might have discouraged a reasonable worker from reporting Janet Storer's conduct to Human Resources representative Meghan Ledford; statement of intention to file an Equal Employment Opportunity Commission claim.

Concerning the third element, that of causal connection, that connection may be shown in many ways.  For example, you may or may not find that there is a sufficient connection through timing that is University of Pittsburgh Physicians' action followed shortly after University of Pittsburgh Physicians became aware of Sam Mathews' report of Janet Storer's conduct to Human Resources representative, Meghan Ledford; statement of intention to file an Equal Employment Opportunity claim. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Sam Mathews or a change in demeanor toward Sam Mathews.

Ultimately, you must decide whether Sam Mathews' report of Janet Storer's conduct to Human Resources representative Meghan Ledford; statement of intention to file an Equal

Employment Opportunity Commission claim had a determinative effect on being placed on a Performance Improvement Plan and subsequent termination.  "Determinative effect" means that if not for Sam Mathews' report of Janet Storer's conduct to Human Resources representative Meghan Ledford; statement of intention to file an Equal Employment Opportunity Commission claim, Sam Mathews being placed on a Performance Improvement Plan and subsequent termination would not have occurred.

_____ ACCEPTED        _____ DENIED        _____ MODIFIED

15

### 8.4.2   ADEA Damages – Back Pay

If you find that University of Pittsburgh Physicians intentionally discriminated against Sam Mathews in placing him on a Performance Improvement Plan and subsequently terminating Sam Mathews, then you must determine the amount of damages that University of Pittsburgh Physicians' actions have caused Sam Mathews. Sam Mathews has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Sam Mathews for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, which Sam Mathews would have received from University of Pittsburgh Physicians, had Sam Mathews not been the subject of University of Pittsburgh Physicians' intentional discrimination.

Back pay damages, if any, apply from the time Sam Mathews was terminated on July 29, 2014 until the date of your verdict.

You must reduce any award by the amount of the expenses that Sam Mathews would have incurred in making those earnings.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Sam Mathews has obtained from other employment during this period.  However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

_____ ACCEPTED          _____ DENIED          _____ MODIFIED

16

### 8.4.3   ADEA Damages – Liquidated Damages

If you find that Sam Mathews is entitled to recover damages for lost wages or benefits, you must determine if University of Pittsburgh Physicians' conduct was willful. If you find that University of Pittsburgh Physicians willfully violated the law, then you must award plaintiff double the amount of damages for lost wages and benefits that you have found. Sam Mathews has the burden of proving willfulness by a preponderance of the evidence.

You must find University of Pittsburgh Physicians' violation of the ADEA to be willful if University of Pittsburgh Physicians knew or showed reckless disregard for whether the placing Sam Mathews on a Performance Improvement Plan and subsequent termination was prohibited by the law. To establish willfulness it is not enough to show that University of Pittsburgh Physicians acted negligently. If you find that University of Pittsburgh Physicians did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard as to whether its conduct was prohibited by the law, then University of Pittsburgh Physicians' conduct was not willful and you cannot award double the amount of damages for lost wages and benefits

_____ ACCEPTED          _____ DENIED          _____ MODIFIED

17

**8.4.4    ADEA Damages – Front Pay**

You may determine and award separately a monetary amount equal to the present value of any future wages and benefits that Sam Mathews would reasonably have earned from University of Pittsburgh Physicians had Sam Mathews not been placed on a Performance Improvement Plan and subsequently terminated for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Sam Mathews will receive from other employment during that time. Sam Mathews has the burden of proving these damages by a preponderance of the evidence.

If you find that Sam Mathews is entitled to recovery of future earnings from University of Pittsburgh Physicians, then you must reduce any award by the amount of the expenses that Sam Mathews would have incurred in making those earnings.

You must also reduce any award to its present value by considering the interest that Sam Mathews could earn on the amount of the award if he made a relatively risk-free investment.  The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to Sam Mathews if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Sam Mathews can earn interest on it for the period of time between the date of the award and the date he would have earned the money.  So you should decrease the amount of any award for loss of future earnings by the amount of interest that Sam Mathews can earn on that amount in the future.

_____ ACCEPTED          _____ DENIED          _____ MODIFIED

RESPECTFULLY SUBMITTED:

PATBERG, CARMODY & GING

DATE: May 4, 2017          By:    /s/ Rolf Louis Patberg, Esquire
                                  Rolf Louis Patberg, Esquire
                                  PA I.D. No.:  65185
                                  Patberg, Carmody & Ging
                                  Deutschtown Center
                                  801 Vinial Street – Third Floor
                                  Pittsburgh, PA  15212
                                  (412) 232-3500
                                  Attorney for Plaintiff.

**JURY TRIAL DEMANDED**

18

## CERTIFICATE OF SERVICE

I, Rolf Louis Patberg, Esquire, hereby certify that a true and correct copy of the foregoing

Plaintiff's Proposed Jury Instructions was forwarded this 4nd day of May, 2017, via E-mail to the

following counsel of record:


**Via E-Mail:  wmyers@eckertseamans.com
and jmyers@eckertseamans.com**
William S. Myers, Esquire
John J. Myers, Esquire
Eckert Seamans
600 Grant Street - 44th Floor
Pittsburgh, PA  15219




/s/ Rolf Louis Patberg, Esquire
Rolf Louis Patberg, Esquire