### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KUZHIKALAYIH MATHEWS a/k/a SAMUEL "SAM" MATHEWS, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 16-1148 |
| v. | ) ) | Judge Kearney |
| UNIVERSITY OF PITTSBURGH PHYSICIANS a/k/a UPP, INC., | ) ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANTS PROPOSED JURY INSTRUCTIONS

Defendant submits the following proposed jury instructions on the four counts remaining in this case. By submitting a proposed instruction on a claim or element of damages, Defendant does not intend to waive its right to move for judgment as a matter of law on that claim or element based upon the insufficiency of the evidence actually presented at trial. On the contrary, Defendant reserves the right to make such a motion on all claims and elements. Defendant also reserves the right to add to, amend or conform these proposed instructions based upon the development of the testimony at trial.

## Instruction No. 1 - Introduction

Mathews has made multiple claims in this case. Two of his claims are under Title VII of the Civil Rights Act of 1964, which I will refer to as Title VII in these instructions, and two of his claims are under the Age Discrimination in Employment Act of 1967, which I will refer to as the ADEA. He has also asserted similar claims under the state law known as the Pennsylvania Human Relations Act. The law on those claims is the same as the laws on the Title VII and ADEA claims, so I will not be instructing you separately on the state law claims.

Title VII makes it unlawful for an employer to discriminate against an employee because of the employee's race, color, religion, sex or national origin. In this case, Mathews claims that he was discharged from employment because of his national origin, which he has described as a Singaporean national of Indian Origin.[1]

The ADEA makes it unlawful for an employer to discriminate against an employee because of the employee's age, if the employee is age 40 or over. In this case, Mathews also claims that he was discharged because of his age.

Both Title VII and the ADEA prohibit employers from retaliating against employees for opposing practices that violate Title VII and ADEA. In this case, Mathews claims that his discharge was in retaliation for his opposition to alleged unlawful employment practices by UPP. There are, therefore, four separate and independent claims made by Mathews to which you must give independent consideration.

UPP denies that Mathews was discriminated against because of his national origin, his age and also denies that he expressed any opposition to allegedly unlawful employment practices. On the contrary, UPP submits that it discharged Mathews because of his performance and his failure to accept the improvements recommended by his supervisor as part of the Performance Improvement Plan. .

I will now instruct you more fully on the issues you must address in this case.

Source: Adapted from Third Circuit Model Jury Instructions

---

[1] Complaint ¶ 6.

## Instruction 2:  Elements of a Title VII Claim— Disparate Treatment--Pretext

In this case Mathews is alleging that UPP discharged him because of his national origin, Singaporean.  In order for Mathews to recover on this discrimination claim against UPP, Mathews must prove that UPP intentionally discriminated against Mathews. This means that Mathews must prove that his national origin was a determinative factor in UPP's decision to discharge Mathews.

To prevail on this claim, Mathews must prove both of the following by a preponderance of the evidence:

First: UPP discharged Mathews; and

Second: Mathews' national origin was a determinative factor in UPP's decision.

Mathews must prove that UPP acted with the intent to discriminate against Mathews, although he is not required to prove that UPP acted with the particular intent to violate his federal civil rights. Moreover, Mathews is not required to produce direct evidence of intent, such as statements admitting discrimination.  Intentional discrimination may be inferred from the existence of other facts.

UPP has given a nondiscriminatory reason for discharging Mathews. If you disbelieve UPP's explanation for its conduct, then you may, but need not, find that Mathews has proved intentional discrimination. In determining whether UPP's stated reason for its actions was a pretext, or excuse, for discrimination, you may not question UPP's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of UPP or believe it is harsh or unreasonable. You are not to consider UPP's wisdom.  However, you may consider whether UPP's reason is merely a cover up for discrimination.

Ultimately, you must decide whether Mathews has proven that his national origin was a determinative factor in UPP's decision to discharge him.  "Determinative factor" means that if not for Mathews' national origin, the discharge would not have occurred.

**Authority:     Third Circuit Model Jury Instruction 5.1.2**

## Instruction 3:  Elements of a Title VII Claim — Retaliation

Mathews claims that UPP discriminated against him because of his having opposed practices that violate Title VII, specifically, that he complained about national origin discrimination.

To prevail on this claim, Mathews must prove all of the following by a preponderance of the evidence:

First: Mathews complained about being discriminated against because of his national origin.

Second: Mathews was discharged after the protected conduct took place.

Third: There was a causal connection between the complaint of discrimination and Mathews' discharge. In other words, but for the complaint, Mathews would not have been discharged.

Concerning the first element, Mathews need not prove the merits of his complaint about national origin discrimination, but only that he was acting under a reasonable, good faith belief that UPP had violated his right to be free from national origin discrimination.  To be protected activity, a complaint cannot be just a general complaint about unfair treatment.  The complaint must explicitly or implicitly state that national origin was the reason for the alleged discrimination.[2]

Concerning the third element, that of causal connection, that connection may be shown in many ways.  For example, you may or may not find that there is a sufficient connection through timing; that is UPP's action followed shortly after it became aware of Mathews' complaint about national origin discrimination.  For timing alone to serve as evidence of causation, the discharge must be so close in time to the complaint of national origin discrimination to be unusually suggestive of a causal connection.[3]  Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mathews or a change in demeanor toward Mathews after the protected activity.

Ultimately, you must decide whether Mathews' complaint about national origin discrimination had a determinative effect on his discharge.  "Determinative effect" means that if not for Mathews' complaint of national origin discrimination the discharge would not have occurred.

**Authority:     Third Circuit Model Jury Instructions 5.1.7; as modified by cases cited.**

---

[2] *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-702 (3d Cir. 1995) ("However, that letter does not explicitly or implicitly allege that age was the reason for the alleged unfairness. A general complaint of unfair treatment does not translate into a charge of illegal age discrimination.")

[3] *Krouse v. Am. Sterilizer Co*., 126 F.3d 494, 503 (3d Cir. 1997) ("Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.")

## Instruction 4:  <u>Title VII Damages – Compensatory Damages</u>

I am now going to instruct you on damages.  Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not UPP should be held liable.

If you find by a preponderance of the evidence that UPP violated Mathews' rights under Title VII by terminating him then you must consider the issue of compensatory damages.  You must award Mathews an amount that will fairly compensate him for any injury he actually sustained as a result of UPP's conduct.  The damages that you award must be fair compensation, no more and no less.  The award of compensatory damages is meant to put Mathews in the position he would have occupied if the discrimination had not occurred.  Mathews has the burden of proving damages by a preponderance of the evidence.

Mathews must show that his damages would not have occurred without UPP's action. Mathews must also show that UPP's act played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of UPP's act. This test is to be distinguished from the test you must employ in determining whether UPP's actions were motivated by discrimination.  In other words, even assuming that UPP's actions were motivated by discrimination, Mathews is not entitled to damages for an injury unless UPP's discriminatory actions actually played a substantial part in bringing about that injury. In determining the amount of any damages that you decide to award, you should be guided by common sense.  You must use sound judgment in fixing an award of damages, drawing reasonable inferences from the facts in evidence.  You may not award damages based on sympathy, speculation, or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mathews experienced as a consequence of UPP's actions.  No evidence of the monetary value of such intangible things as pain and suffering has been, or need be, introduced into evidence.  There is no exact standard for fixing the compensation to be awarded for these elements of damage.  Any award you make should be fair in light of the evidence presented at the trial.

I instruct you that in awarding compensatory damages, you are not to award damages for the amount of wages that Mathew would have earned, either in the past or in the future, if he had continued in employment with Defendant.  These elements of recovery of wages that Mathew would have received from UPP are called back pay and front pay.  Back pay and front pay are to be awarded separately under instructions that I have or will give you, and any amounts for back pay and front pay are to be entered separately on the verdict form.

As I instructed you previously, Plaintiff has the burden of proving damages by a preponderance of the evidence. But the law does not require that Plaintiff prove the amount of his losses with mathematical precision; it requires only as much definiteness and accuracy as circumstances permit.

**Authority**:    **Adapted from Third Circuit Model Jury Instruction 5.4.1**

**Instruction 5:       Title VII Damages — Punitive Damages**

Mathews claims the acts of UPP were done with malice or reckless indifference to Mathews' federally protected rights and that as a result there should be an award of what are called "punitive" damages. A jury may award punitive damages to punish a defendant, or to deter the defendant and others like the defendant from committing such conduct in the future.

An award of punitive damages is permissible in this case only if you find by a preponderance of the evidence that a management official of UPP personally acted with malice or reckless indifference to Mathews' federally protected rights. An action is with malice if a person knows that it violates the federal law prohibiting discrimination and does it anyway. An action is with reckless indifference if taken with knowledge that it may violate the law.

But even if you make a finding that there has been an act of discrimination with malice or reckless disregard of Mathews' federal rights, you cannot award punitive damages if UPP proves by a preponderance of the evidence that it made a good-faith attempt to comply with the law, by adopting policies and procedures designed to prevent unlawful discrimination such as that suffered by Mathews.

An award of punitive damages is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them. I will now discuss some considerations that should guide your exercise of this discretion.

If you have found the elements permitting punitive damages, as discussed in this instruction, then you should consider the purposes of punitive damages. The purposes of punitive damages are to punish a defendant for a malicious or reckless disregard of federal rights, or to deter a defendant and others like the defendant from doing similar things in the future, or both. Thus, you may consider whether to award punitive damages to punish UPP. You should also consider whether actual damages standing alone are sufficient to deter or prevent UPP from again performing any wrongful acts it may have performed. Finally, you should consider whether an award of punitive damages in this case is likely to deter others from performing wrongful acts similar to those UPP may have committed.

If you decide to award punitive damages, then you should also consider the purposes of punitive damages in deciding the amount of punitive damages to award. That is, in deciding the amount of punitive damages, you should consider the degree to which UPP should be punished for its wrongful conduct, and the degree to which an award of one sum or another will deter UPP or others from committing similar wrongful acts in the future.

**Authority:  Third Circuit Model Jury Instructions 5.4.2**

**Instruction No. 6:          Title VII Damages – Back Pay**

If you find that UPP intentionally discriminated against Mathews in discharging Mathews, then you must determine the amount of damages that UPP's actions have caused Mathews. Mathews has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mathews for any lost wages and benefits, [taking into consideration any increases in salary and benefits, including pension,][4] that Mathews would have received from UPP had Mathews not been the subject of UPP's intentional discrimination.

Back pay damages, if any, apply from the time Mathews was discharged until the date of your verdict.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mathews has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

You are further instructed that Mathews has a duty to mitigate his damages--that is Mathews is required to make reasonable efforts under the circumstances to reduce his damages. It is UPP's burden to prove that Mathews has failed to mitigate. So if UPP persuades you, by a preponderance of the evidence, that Mathews has failed to use reasonable diligence to seek and obtain other comparable employment,[5] you must reduce the award of damages by the amount of the wages that Mathews would have earned if he had used reasonable diligence to obtain those opportunities. If UPP proves that Mathews ceased to look for other employment for any period of time, then you must not award Mathews any back pay for that period of time.[6]

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**Authority:  Third Circuit Model Jury Instructions 5.4.3**

---

[4] The bracketed language should be used only if there is competent evidence showing such increases would have been awarded.

[5] The standard for the duty to mitigate is one of "reasonable diligence" to secure employment. *Anastasio v. Schering Corp.*,838 F.2d 701 (1988); *Wehr v. Burroughs Corp.,* 619 F.2d 276, 278 n. 3 (3d Cir.1980)

[6] *Tubari, Ltd., Inc. v. NLRB*, 959 F.2d 451, 453-454 (3d Cir. 1992 ("[A]n employer is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment."); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998); *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir.1990); *Holocheck v. Luzerne County Head Start, Inc*., 2007 WL 954308, **14-15 (M.D. Pa. Mar. 28, 2007)

## Instruction No. 7: Title VII Damages --- Front Pay

You may determine and award separately a monetary amount equal to the present value of any future wages and benefits that Mathews would reasonably have earned from UPP had Mathews not been discharged for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mathews will receive from other employment during that time. Mathews has the burden of proving these damages by a preponderance of the evidence.

If you find that Mathews would not have continued to work past a certain age, had he not been discharged, then you should not award Mathews any front pay beyond the date he reached or will reach that age.[7]

You must also reduce any award to its present value by considering the interest that Mathews could earn on the amount of the award if he made a relatively risk-free investment. The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to Mathews if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mathews can earn interest on it for the period of time between the date of the award and the date he would have earned the money.  So you should decrease the amount of any award for loss of future earnings by the amount of interest that he can earn on that amount in the future.

Authority:  Third Circuit Model Instruction 5.4.4

---

[7] This sentence was added to the Model Instruction.

**Instruction No. 8:        Elements of an ADEA Claim— Disparate Treatment**

As I explained to you before, in this case Mathews is also alleging that he was discharged because of his age in violation of the ADEA.  In order for him to recover on this discrimination claim against UPP, Mathews must prove that UPP intentionally discriminated against him. This means that Mathews must prove that his age was a determinative factor in UPP's decision to discharge him.

To prevail on this claim, Mathews must prove both of the following by a preponderance of the evidence:

First: UPP discharged him; and

Second: Mathews' age was a determinative factor in UPP's decision.

Mathews must prove that UPP acted with the intent to discriminate against Mathews, although he is not required to prove that UPP acted with the particular intent to violate his federal civil rights. Moreover, Mathews is not required to produce direct evidence of intent, such as statements admitting discrimination. Intentional discrimination may be inferred from the existence of other facts.

UPP has given a nondiscriminatory reason for its decision to discharge Mathews. If you disbelieve UPP's explanations for its conduct, then you may, but need not, find that Mathews has proved intentional discrimination.  In determining whether UPP's stated reason for its actions was a pretext, or excuse, for discrimination, you may not question UPP's business judgment. You cannot find intentional discrimination simply because you disagree with the business judgment of UPP or believe it is harsh or unreasonable. You are not to consider UPP's wisdom. However, you may consider whether UPP's explanation is merely a cover-up for discrimination.

Ultimately, you must decide whether Mathews has proven that his age was a determinative factor in UPP's decision to discharge him.  "Determinative factor" means that if not for Mathews' age, the discharge decision would not have occurred.

**Authority:    Third Circuit Model Jury Instructions 8.1.1**

## Instruction 9:  Elements of an ADEA Claim — Retaliation

Mathews' also claims that UPP discriminated against him because Mathews allegedly complained about age discrimination.

To prevail on this claim, Mathews must prove all of the following by a preponderance of the evidence:

First: Mathews made a complaint to UPP about age discrimination;

Second: Mathews was discharged at the time, or after, the protected conduct took place.

Third: There was a causal connection between the complaint about age discrimination and Mathews' discharge. In other words, but for the complaint, Mathews would not have been discharged.

Concerning the first element, Mathews need not prove the merits of his complaint about age discrimination, but only that he was acting under a reasonable, good faith belief that UPP had violated his right to be free from age discrimination. To be protected activity, a complaint cannot be just a general complaint about unfair treatment. The complaint must explicitly or implicitly state that age was the reason for the alleged unfairness.[8]

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing; that is UPP's action followed shortly after it became aware of Mathews' complaint about age discrimination. For timing alone to serve as evidence of causation, the discharge must be so close in time to the complaint of national origin discrimination to be unusually suggestive of a causal connection.[9] Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mathews or a change in demeanor toward Mathews after the protected activity.

Ultimately, you must decide whether Mathews' complaint about age discrimination had a determinative effect on his discharge. "Determinative effect" means that if not for Mathews' complaint of age discrimination the discharge would not have occurred.

**Authority:  Third Circuit Model Jury Instructions 8.1.5**

---

[8] *Barber v. CSX Distribution Services*, 68 F.3d 694, 701-702 (3d Cir. 1995) ("However, that letter does not explicitly or implicitly allege that age was the reason for the alleged unfairness. A general complaint of unfair treatment does not translate into a charge of illegal age discrimination.")

[9] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) ("Even if timing alone could ever be sufficient to establish a causal link, we believe that the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred.")

## Instruction No. 10: ADEA Damages — Back Pay

If you find that UPP intentionally discriminated against Mathews in discharging Mathews, then you must determine the amount of damages that UPP's actions have caused Mathews. Mathews has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mathews for any lost wages and benefits, [taking into consideration any increases in salary and benefits, including pension,][10] that Mathews would have received from UPP had Mathews not been the subject of UPP's intentional discrimination.

Back pay damages, if any, apply from the time Mathews was discharged until the date of your verdict.

If you award back pay, you are instructed to deduct from the back pay figure whatever wages Mathews has obtained from other employment during this period. However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of back pay.

You are further instructed that Mathews has a duty to mitigate his damages--that is Mathews is required to make reasonable efforts under the circumstances to reduce his damages. It is UPP's burden to prove that Mathews has failed to mitigate. So if UPP persuades you, by a preponderance of the evidence, that Mathews has failed to use reasonable diligence to seek and obtain other comparable employment,[11] you must reduce the award of damages by the amount of the wages that Mathews reasonably would have earned if he had used reasonable diligence to obtain those opportunities. If UPP proves that Mathews ceased to seek other employment for any period of time, then you must not award Mathews any back pay for that period of time.[12]

In assessing damages, you must not consider attorney fees or the costs of litigating this case. Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. Therefore, attorney fees and costs should play no part in your calculation of any damages.

**Authority: Third Circuit Model Jury Instruction 8.4.2, as modified in ¶ 5**

---

[10] Only if there is competent evidence showing such increases would have been awarded.

[11] The standard for the duty to mitigate is one of "reasonable diligence" to secure employment. *Anastasio v. Schering Corp.*,838 F.2d 701 (1988); *Wehr v. Burroughs Corp.,* 619 F.2d 276, 278 n. 3 (3d Cir.1980)

[12] *Tubari, Ltd., Inc. v. NLRB*, 959 F.2d 451, 453-454 (3d Cir. 1992 ("[A]n employer is released from the duty to establish the availability of comparable employment if it can prove that the employee made no reasonable efforts to seek such employment."); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 54 (2d Cir. 1998); *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir.1990); *Holocheck v. Luzerne County Head Start, Inc*., 2007 WL 954308, **14-15 (M.D. Pa. Mar. 28, 2007)

## Instruction No. 11:        ADEA Damages -- Liquidated Damages

If you find that Mathews is entitled to recover damages for lost wages or benefits, you must determine if UPP's conduct was willful. If you find that UPP willfully violated the law, then you must award plaintiff double the amount of damages for lost wages and benefits that you have found. Mathews has the burden of proving willfulness by a preponderance of the evidence.

You must find UPP's violation of the ADEA to be willful if UPP knew or showed reckless disregard for whether the discharge was prohibited by the law. To establish willfulness it is not enough to show that UPP acted negligently. If you find that UPP did not know, or knew only that the law was potentially applicable, and did not act in reckless disregard as to whether its conduct was prohibited by the law, then UPP's conduct was not willful and you cannot award double the amount of damages for lost wages and benefits.

**Authority:  Third Circuit Model Jury Instruction 8.4.3**

## Instruction No. 12:  ADEA Damages — Front Pay

You may determine and award separately a monetary amount equal to the present value of any future wages and benefits that Mathews would reasonably have earned from UPP had Mathews not been discharged for the period from the date of your verdict through a reasonable period of time in the future. From this figure you must subtract the amount of earnings and benefits Mathews will receive from other employment during that time. Mathews has the burden of proving these damages by a preponderance of the evidence.

If you find that Mathews would not have continued to work past a certain age, had he not been discharged, then you should not award Mathews any front pay beyond the date he reached or will reach that age.[13]

You must also reduce any award to its present value by considering the interest that Mathews could earn on the amount of the award if he made a relatively risk-free investment. The reason you must make this reduction is because an award of an amount representing future loss of earnings is more valuable to Mathews if he receives it today than if it were received at the time in the future when it would have been earned.  It is more valuable because Mathews can earn interest on it for the period of time between the date of the award and the date he would have earned the money.  So you should decrease the amount of any award for loss of future earnings by the amount of interest that he can earn on that amount in the future.

**Authority:  Third Circuit Model Jury Instruction 8.4.4**

---

[13] This sentence was added to the Model Instruction.

**Instruction No. 13:**     **No Recovery Under Both ADEA and Title VII**

As you have already been instructed, it is your job to determine whether or not Mathews' age or retaliation for making an age discrimination complaint were determinative factors in UPP's decision to discharge him.  It is also your job to determine whether or not Mathew's national origin or retaliation for making a complaint of national origin discrimination were determinative factors in UPP's decision to discharge him.

You are not permitted to decide that more than one of these factors was a determinative factor in the decision to discharge Mathews.  In other words, you cannot render a verdict for Mathews on more than one of his claims.

**Authority**:     *Culver v. Birmingham Bd. of Educ.*, 646 F. Supp. 2d 1270, at 1270-71 (N.D. Ala. 2009); *Whitaker v. Tenn. Valley Auth. Bd. of Directors*, 2010 WL 1493899, at * 9 (M.D. Tenn. Apr. 14, 2010); *Deangelo v. Dentalez, Inc.*, 738 F. Supp. 2d 572, 579 (E.D. Pa. 2010).

**Instruction No. 14.**     **Business Judgment**

## Business Judgment

      To discredit UPP's explanations for its actions, Mathews cannot simply show that UPP's decisions were wrong or mistaken, because the issue is whether unlawful discrimination or retaliation motivated UPP, not whether UPP is wise, shrewd, prudent or competent.  Even if you would conclude that the Defendant made a mistake with respect to its decision to discharge Mathews, or even if you conclude that you would have made a different decision, you may not substitute your judgment for UPP's on business matters.  An employer is entitled to make an employment decision for a good reason, a bad reason or for no reason at all, so long as the decision is not motivated by an unlawful intent to discriminate.

**Authority:**     *Yost v. Western Pennsylvania-West Virginia Synod of the Lutheran Church in America, Inc.,* 789 F.Supp. 191 (W.D. Pa. 1992); *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101 (3d Cir. 1997) (*en banc)*; *Fuentes v. Perskie,* 32 F.3d 759 (3d Cir. 1994); *see also, Walker v. AT&T Technologies,* 995 F.2d 846 (8th Cir. 1993) (reversible error not to give business judgment instruction); *Stemmons v. Missouri Dep't of Corrections*, 82 F.3d 817 (8th Cir. 1996) (same).

**Instruction No. 15:**     **Natural Persons and Corporate Citizens**

Mathews is an individual and UPP is a corporation.  You should consider and decide this case as an action between persons of equal standing in the community and equal worth.  A corporation is entitled to the same fair trial at your hands as a private individual.  All persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice.


**Authority**:    4 Honorable Leonard B. Sand et. al., Modern Federal Jury Instructions § 71.01 (2003).

**Instruction No. 16:     Sympathy**

In arriving at a verdict in this case, under your oath as jurors, you must not permit sympathy, prejudice or emotion to influence you.  You must put aside any personal feelings you may have about the parties in this case.  You should be guided solely by the evidence presented during the trial without regard to the consequences of your decision.  You are to perform your duties without bias for, or prejudice against, any party.


     **Authority:**     Honorable Leonard B. Sand et. al., Modern Federal Jury Instructions § 71.01 (2003).


                                                Respectfully submitted,


                                                s/John J. Myers
                                                John J. Myers (PA I.D. No. 23596)
                                                William S. Myers (PA I.D. No. 38565)
                                                Eckert Seamans Cherin & Mellott LLC
                                                44th Floor, 600 Grant Street
                                                Pittsburgh, PA 15219
                                                412-566-5900